Dennis J. VAN STRATEN, Plaintiff-Appellant, †

v.

MILWAUKEE JOURNAL NEWSPAPER-PUB-
LISHER, Milwaukee Sentinel Newspaper-Publisher,
Appleton Post-Crescent Newspaper-Publisher, Wausau
Daily Herald Newspaper-Publisher, Oshkosh
Northwestern Newspaper-Publisher, and Green Bay
Press Gazette Newspaper-Publisher, Defendants-
Respondents.

Court of Appeals

*No. 88-1801. Submitted on briefs June 1, 1989.—Decided
August 29, 1989.*

(Also reported in 447 N.W.2d 105.)

---

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

For plaintiff-appellant pro se, there was a brief submitted by *Dennis J. Van Straten.*

For Oshkosh Northwestern Newspaper-Publisher and Appleton Post-Crescent Newspaper-Publisher, there was a brief submitted by *Richard M. Burnham* and

*Brady C. Williamson* of *LaFollette & Sinykin* of Madison.

For Milwaukee Journal Newspaper-Publisher and Milwaukee Sentinel Newspaper-Publisher, there was a brief submitted by *John R. Dawson* and *James L. Huston* of *Foley & Lardner* of Milwaukee.

For Wausau Daily Herald there was a brief submitted by *John R. Dawson* and *James L. Huston* of *Foley & Lardner* of Milwaukee.

For Green Bay Press Gazette Newspaper-Publisher there was a brief submitted by *John R. Dawson* and *James L. Huston* of *Foley & Lardner* of Milwaukee.

Before Cane, P.J., LaRocque and Dykman, JJ.

CANE, P.J. Dennis Van Straten appeals a summary judgment in favor of Milwaukee Journal Newspaper, et al (newspapers), dismissing his actions for violation of confidentiality under sec. 146.025(5), Stats., defamation, and invasion of privacy against six Wisconsin newspapers and some of their employees. The circuit court held that Van Straten failed to comply with sec. 802.08(3), Stats., requiring the responding party to a motion for summary judgment to set forth specific facts showing that there is a genuine issue for trial. The circuit court found that even disregarding this failure, the newspapers were entitled to summary judgment because Van Straten was a limited purpose public figure and he failed to make the required showing of actual malice. Additionally, the circuit court concluded that even if Van Straten was not a limited purpose public figure, the newspapers that relied on a wire service for the contents of their articles about Van Straten were not negligent as a matter of law. Because we agree that Van Straten was a limited purpose public figure who did not show actual malice, we affirm the summary judgment.

Van Straten attempted suicide on October 24, 1985, while he was an inmate awaiting trial at the Outagamie County Jail. He was taken to a local hospital where he received more than forty stitches to wounds on his wrist and forearm. He was then involuntarily admitted to the Winnebago Mental Health Institution (WMHI) where his blood was tested for exposure to the AIDS virus. After returning to the Outagamie County Jail, Van Straten was informed, on November 8, that he had tested positive to exposure to the AIDS virus. He voluntarily transferred back to WMHI, but he never consented to a disclosure of any medical information to anyone.

On November 13, 1985, Outagamie County Sheriff Thomas Drootsan, informed reporters from the Appleton Post-Crescent Newspaper that jail personnel knew Van Straten was homosexual and that he exposed jailers to AIDS when he slashed his wrists during the suicide attempt. The Post-Crescent published a newspaper report on November 13 entitled "Sheriff vows he won't take AIDS prisoner." The report stated that Sheriff Drootsan would not accept a prisoner back into his jail who tested positive for exposure to the deadly AIDS virus, and who in a suicide attempt sprayed two jailers with his blood. The article also reported that jail deputies had requested the testing of Van Straten's blood because he was "a known bisexual, [and] had previously made his many homosexual experiences common knowledge." The article referred to the sheriff's conviction that guidelines and policies for handling AIDS in the jail setting should be developed in order to protect jail personnel and prisoners.

On November 14, 1985, an official from the Public Affairs Office of the Department of Health and Social Services (DHSS) contacted an Appleton Post-Crescent

reporter and told him that Van Straten did not have AIDS, but merely tested positive for HTLV–3 (exposure to the AIDS virus). The DHSS official stated that Sheriff Drootsan and others were overreacting to the situation. On the same day, the Appleton Post-Crescent printed an article reporting the information given by the DHSS official.

On November 15, Van Straten contacted a reporter from the Appleton Post-Crescent to rebut the allegations about him in earlier stories printed in the Post-Crescent. Among the allegations he denied were that he squirted jail personnel with his blood, that he is a known homosexual or bisexual, and that he has AIDS.[1] On the same day, the Appleton Post-Crescent printed an article entitled "AIDS prisoner tells his side," reporting the substance of the interview with Van Straten.

On December 11, 1985, Van Straten was tried and convicted of the crimes for which he was held awaiting trial in the Outagamie County Jail. At Van Straten's request, a WMHI doctor wrote to the sentencing judge to confirm that Van Straten had tested positive for AIDS. Van Straten also wrote a letter to the judge asking for a lighter sentence because he had AIDS.[2]

The Appleton Post-Crescent printed additional articles following up on the initial stories. These articles, like the first, were based on interviews with the jail personnel involved. Many of the later articles mention Van Straten and the suicide attempt only as incidental

---

[1] The newspapers argue that during the interview, Van Straten admitted that he had AIDS and that he had been suffering from AIDS symptoms for months. However, for purposes of this appeal, we will assume as true the facts as alleged by Van Straten.

[2] Van Straten claims that at the time he wrote to the judge, the newspapers had him believing he did have AIDS.

to Sheriff Drootsan's campaign to develop policies in the state correctional system for the handling of AIDS-infected inmates. The last article Van Straten complained of was dated April 12, 1987.

From the beginning, the Associated Press (AP) adopted the Post-Crescent articles and transmitted them via the wire service. Several Wisconsin newspapers, including the rest of the defendant-newspapers, republished the AP reports. These reports also continued for the next couple of years.

Van Straten brought suit against the newspapers, claiming that statements published in their newspapers defamed him, invaded his privacy, and violated his right to confidentiality of the AIDS test results. The newspapers moved for summary judgment, and the trial court granted the motion in favor of all the defendants.

On appeal, Van Straten argues that the trial court erred by holding that he was a limited purpose public figure for purposes of the AIDS controversy and that even if he was, he met his burden of showing actual malice. Alternatively, Van Straten argues that he was denied adequate discovery opportunity, thus disabling him from making the required showing. Finally, Van Straten argues that the trial court erred by granting summary judgment in his invasion of privacy and violation of confidentiality claims.

When reviewing a grant of summary judgment, we must apply the standards and methods set forth in sec. 802.08, Stats. According to this standard of review, we must uphold a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sec. 802.08(2), Stats. Thus, this court

will reverse the judgment of the circuit court only if it incorrectly decided a legal issue or if material facts are in dispute. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W.2d 676, 678 (1979).

## DEFAMATION CLAIM

The elements of a defamation claim, as stated in Restatement (Second) of Torts, sec. 558 (1977), include:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

The United States Supreme Court, in *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964), established a constitutional element in defamation claims. It held that the first and fourteenth amendments require a public official bringing a defamation claim to prove "actual malice." *Id.* at 279–83.

The definition of a "public official" has expanded since the *New York Times* decision. In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974), in addition to "public officials," two types of "public figures" were discussed. The first type is the person who has such a pervasive fame or notoriety that he or she may be deemed a public figure for all purposes. The second type is one who, by being drawn in or injecting himself or herself into a public controversy, becomes a public figure for a limited range of issues. The Wisconsin Supreme Court has agreed that whether a plaintiff is a public

figure for all purposes or a public figure for a particular controversy, he or she must establish that the news media acted with actual malice. *Lewis v. Coursolle Broadcasting,* 127 Wis. 2d 105, 119, 377 N.W.2d 166, 172 (1985).

Our supreme court has delineated criteria applicable to whether a defamation plaintiff may be considered a limited purpose public figure. The two requirements, as established in *Denny v. Mertz,* 106 Wis. 2d 636, 649–50, 318 N.W.2d 141, 147, *cert. denied,* 459 U.S. 883 (1982), are that: (1) there must be a public controversy; and (2) the court must look at the nature of the plaintiff's involvement in the public controversy to see whether he has injected himself into the controversy so as to influence the resolution of the issues involved. The *Denny* court, relying on *Gertz,* emphasized the importance of the factors that the plaintiff's status is such that he has access to the media in order to rebut the defamation and that the plaintiff voluntarily exposed himself to the controversy, thereby increasing risk of injury from defamation. *Denny,* 106 Wis. 2d at 650, 318 N.W.2d at 147–48.

In *Wiegel v. Capital Times Co.,* 145 Wis. 2d 71, 426 N.W.2d 43 (Ct. App. 1988), we discussed a three-step inquiry used by the federal courts to determine whether one may be considered a limited purpose public figure.[3] The three steps include: (1) isolating the controversy at issue; (2) examining the plaintiff's role in the controversy to be sure that it is more than trivial or tangential; and (3) determining if the alleged defamation was ger-

---

[3] The federal cases relied on by the *Wiegel* court are *Tavoulareas v. Piro,* 817 F.2d 762, 772–73 (D.C. Cir. 1987), *cert. denied,* 108 S. Ct. 200 (1987), and *Waldbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1296–98 (D.C. Cir. 1980), *cert. denied,* 449 U.S. 898 (1980).

mane to the plaintiff's participation in the controversy. *Id.* at 82–83, 426 N.W.2d at 49. In *Wiegel,* we noted that the *Denny* criteria emphasizes the voluntariness of the plaintiff's involvement in the controversy and that the federal inquiry focuses on the plaintiff's role in the controversy rather than on any desire for publicity or other voluntary act on his part. *Wiegel,* 145 Wis. 2d at 83–84, 426 N.W.2d at 49.

We adopted the federal analysis in *Wiegel* for three reasons. First is the fact that the *Gertz* Court recognized that "voluntary injection" into a controversy is only one way of becoming a limited purpose public figure and that a person can be drawn into a particular public controversy and thereby become a public figure for a limited range of issues. Second, we noted that Professor Tribe has concluded that "public persons" include involuntary public figures—those who are "involved in or directly affected by the actions of public officials."[4] Third, we looked to the purpose served by protecting the press from defamation suits for comment on people involved in public issues and concluded that this purpose "could well be frustrated if the individuals could, by themselves and wholly independent of their involvement in the controversy, determine whether they are, or are not, 'public figures.' " *Wiegel,* 145 Wis. 2d at 85, 426 N.W.2d at 50.

In applying these steps to the present case, we must first determine whether the events surrounding Van Straten's suicide attempt constitute a public controversy. The trial court found that in 1985, at the time of the suicide attempt, there was initial reporting and publication of information regarding AIDS, the effect it would have on the public, and the effect it would have on

---

[4] Tribe, *American Constitutional Law* 880 (2d ed. 1988), *cited in Wiegel,* 145 Wis. 2d at 84, 426 N.W.2d at 49.

the prison system and county jail system in Wisconsin. The newspapers argue that issues of the AIDS epidemic, its victims' ordinary right to keep their medical records confidential, and the dangers to public servants who deal with AIDS victims all preexisted Van Straten's suicide attempt. Additional factors indicating that a public controversy existed are that Sheriff Drootsan felt compelled to contact reporters to publicize his campaign to initiate statewide policies and procedures to deal with inmates suspected of having AIDS, and that the AP, recognizing the news to be of statewide interest, promptly moved the report to all of its Wisconsin members on the very day that the Appleton Post-Crescent ran its story.

The second step is to examine Van Straten's role in the controversy. The trial court found that his involvement was not tangential but, rather, was at the heart of the controversy. The newspapers argue that Van Straten placed himself in the public eye by choosing to slit his wrists causing jailers to fear contracting AIDS from his blood. They assert that it was natural that Van Straten's conduct would put him at the vortex of Sheriff Drootsan's challenge to the confidentiality of AIDS test results. We agree that the second step has been satisfied. Even though Van Straten claims that he never intended to draw public attention to himself, this is irrelevant. *See Lewis,* 127 Wis. 2d at 117, 377 N.W.2d at 171.

The third step is to determine if the alleged defamation was germane to Van Straten's participation in the controversy over jail safety and confidentiality of AIDS testing. The statements Van Straten claims to be defamatory can be grouped into three general topics: (1) Van Straten's sexual preference; (2) the diagnosis of AIDS (and the referral to Van Straten as an "AIDS prisoner"); and (3) the jail deputies' exposure to Van Straten's blood

915

during the suicide attempt (that Van Straten sprayed or spattered them with his blood).

It seems clear that none of the newspapers printed statements concerning these three topics for any news value they might have had in and of themselves. Rather, the statements were printed in connection with and to emphasize the problems of jail safety and confidentiality of AIDS testing. The newspapers argue that they reported Van Straten was homosexual because male homosexuals run the highest risk of AIDS infection. They reported that his homosexuality was known because it was this knowledge that made the jailers afraid of contracting AIDS. They reported that Van Straten had AIDS and the manner in which deputies came into contact with his blood to explain why the deputies were afraid and to place in context Sheriff Drootsan's public challenge to existing state law and policy.

After applying the three-step test, there is no doubt that AIDS and the issue of how to deal with it in the jail system was a controversy of substantial interest, which affected persons beyond the immediate participants in the controversy at the Outagamie County Jail during the suicide attempt; that Van Straten's role in the controversy was neither trivial nor tangential; and that statements concerning Van Straten's sexual preference, the diagnosis of AIDS and the manner in which jailers came into contact with Van Straten's blood were germane to the controversy. It is also significant that the concern in *Gertz* and *Denny,* that the plaintiff have access to the media in order to rebut the defamation, has been alleviated in this case. Two days after the first article appeared in the Appleton Post-Crescent, Van Straten was able to telephone a reporter from that newspaper,

and, on that same day, an article was published containing Van Straten's version of the incident. We hold that Van Straten was a limited purpose public figure so far as the events surrounding the suicide attempt are involved.

Because of his status as a limited purpose public figure, Van Straten must recite some facts showing that the newspapers printed the statements with actual malice. Whether the undisputed facts in this case fulfill the legal standard of actual malice is a question of law. *Lewis,* 127 Wis. 2d at 120, 377 N.W.2d at 173. Actual malice has been defined as knowledge that the statement was false or reckless disregard as to whether it was false. *New York Times,* 376 U.S. at 279-80. The focus is upon the defendant's attitude pertaining to the truth or falsity of the published statements rather than upon any hatefulness or ill-will. *Cantrell v. Forest City Pub. Co.,* 419 U.S. 245, 252 (1974). The plaintiff must show "that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968). The United States Supreme Court held in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255-56 (1986), that the first amendment requires courts to apply the "clear and convincing evidence" standard to test defamation claims, whether at trial or in summary judgment motions.

Van Straten argues that he recited sufficient facts establishing actual malice by showing that the newspapers did not investigate and confirm the truth of the statements before publishing them. He also argues that the fact that he contacted an Appleton Post-Crescent reporter and told him that the statements were false, the fact that a DHSS official also contacted a reporter to inform him that there had been no diagnosis of AIDS,

917

and the fact that the media nevertheless continued to publish the statements, constitute actual malice.

The newspapers argue that Van Straten did not show actual malice because actual malice does not exist when they merely relied upon statements made by Sheriff Drootsan, other jail personnel, and the AP for their information. Although Van Straten did contact an Appleton Post-Crescent reporter to rebut the statements, it is undisputed that Van Straten himself later indicated that he had AIDS to his sentencing judge. The newspapers also argue that any evidence that they received information from the DHSS official concerning the AIDS diagnosis would create a genuine issue of material fact as to the actual malice question only if there was also evidence that the information made the reporters and editors actually doubt the reports they received from other sources. Van Straten offered no such evidence. The trial court concluded that Van Straten failed to produce sufficient evidence that would raise the newspapers' conduct to the level of actual malice.

We agree with this conclusion. First, it is clear that mere proof of failure to investigate the accuracy of a statement, without more, cannot establish reckless disregard for the truth. *Gertz,* 418 U.S. at 332. Second, the vast majority of information received by the newspapers was from Sheriff Drootsan and other jail personnel and was to the effect that Van Straten was a known homosexual or bisexual, that he had AIDS, and that he squirted jail personnel with his blood. Although Van Straten denied the truth of these statements, he gave conflicting information at different times, at least as to whether he had AIDS. The DHSS official was the only person who unwaveringly challenged the information that Van Straten had AIDS. Affidavits filed by newspa-

pers state that they did not doubt the truth of statements they printed concerning Van Straten. Without some evidence that the newspapers actually entertained serious doubts as to the truth of the publications, we agree with the trial court that Van Straten failed to demonstrate actual malice.

Van Straten further argues that if he has not shown actual malice, it is only because he was denied adequate discovery opportunity when the trial court rejected his July 11, 1988, motion to extend the time until the September summary judgment hearing. "The standard of review of trial court discovery decisions is whether the trial court abused its discretion by ordering or prohibiting discovery." *Vincent & Vincent, Inc. v. Spacek,* 102 Wis. 2d 266, 270, 306 N.W.2d 85, 87 (Ct. App. 1981). The appellant has the burden of showing that the trial court abused its discretion, and we will not reverse unless such abuse is clearly shown. *Swan Sales Corp. v. Jos. Schlitz Brew. Co.,* 126 Wis. 2d 16, 28, 374 N.W.2d 640, 647 (1985).

The trial court noted that almost a year had elapsed between the initiation of the present case and the summary judgment hearing. Van Straten had an opportunity during that time to obtain evidentiary facts through discovery and had not done so. The court also noted that this is not the first time that some of the newspapers have been subjected to a lawsuit containing the allegations made by Van Straten, and yet he produced no admissible facts to the court.

Section 802.08(4) provides that the trial court may refuse a motion for summary judgment or may order a continuance to permit discovery if the party opposing the motion states, in affidavit form, the reasons why it cannot present facts essential to justify its opposition to

919

the summary judgment motion. Van Straten did not submit such an affidavit even though he was specifically informed of this requirement by the newspapers after he filed the extension motion. Because the record reflects ample discovery opportunity and because Van Straten failed to comply with sec. 802.08(4), we find that the trial court did not abuse its discretion.

In summary, we find that Van Straten was a limited purpose public figure and that he showed no actual malice. Because he failed to meet this element of his defamation claim, summary judgment was appropriate.

Additionally, even if Van Straten was not a limited purpose public figure and thus only had to demonstrate negligence on the part of the newspapers,[5] we conclude that he failed to do so. There is no indication that the newspapers, other than the Appleton Post-Crescent, relied on anything other than a wire service for the contents of their reports. We agree with the trial court's conclusion that generally, newspapers that rely on the accuracy of a wire service release are not negligent as a matter of law. *Brown v. Courrier Herald Publishing Co.,* 700 F. Supp. 534, 536–38 (S.D. Ga. 1988); *Nelson v. Associated Press, Inc.,* 667 F. Supp. 1468, 1480 (S.D. Fla. 1987); *Appleby v. Daily Hampshire Gazette,* 478 N.E.2d 721, 725–26 (Mass. 1985). Also, we conclude that the evidence produced by Van Straten does not demonstrate negligence on the part of the Appleton Post-Crescent.

## INVASION OF PRIVACY

Van Straten claims that the newspapers invaded his privacy by publishing the statements about him concerning his sexual preference, his diagnosis of AIDS, and

---

[5] *See Denny,* 106 Wis. 2d at 654, 318 N.W.2d at 150.

his suicide attempt. Section 895.50(2)(c), Stats., sets forth the elements needed to prevail in an invasion of privacy claim. The relevant subsection states:

> Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

Both sec. 895.50(2)(c) and Wisconsin case law state that where a matter of legitimate public interest is concerned, no cause of action for invasion of privacy will lie. *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 431, 279 N.W.2d 179, 186 (1979). We have already determined that the events surrounding Van Straten's suicide attempt constitute a public controversy in a defamation suit context. We hold that this determination, in this case, also satisfies the definition of a "legitimate public interest" in an invasion of privacy suit context. *See Goldman v. Time, Inc.,* 336 F. Supp. 133, 137–38 (N.D. Cal. 1971) (plaintiff cannot avoid the impact of the *New York Times* rule merely by labeling his action as one for invasion of privacy rather than libel). Thus, because Van Straten failed to meet an element of his invasion of privacy claim, summary judgment was appropriate.

## CONFIDENTIALITY

Van Straten argues that he was deprived of his right to confidentiality under sec. 146.025 when the newspapers published reports that he had AIDS. Section

146.025(5) restricts the disclosure of the results of a test for the presence of HIV (human immunodeficiency virus—the cause of AIDS) or an antibody to HIV. The trial court disregarded Van Straten's argument because he did not state a claim under the statute. The trial court correctly determined that sec. 146.025 is directed toward health care providers and blood banks, and not toward newspapers. Section 146.025(6) prohibits further disclosure of test results by persons learning of the results from the health care provider or from the blood bank; however, the newspapers did not obtain the test results under either of those subsections. Therefore, summary judgment was appropriate.

*By the Court.*—Order affirmed.