Roger M. HILLMAN, Plaintiff-Appellant,

v.

COLUMBIA COUNTY, Columbia Sheriff's Department, James Smith, individually and as sheriff of Columbia County, Robert Zanow, Arthur Anacker, Vern Gove, and Gregg Zimmerman, individually, and in their official capacities as deputies of the Columbia County Sheriff's Department, and unknown named persons employed by Columbia County in their individual and official capacities, Defendants-Respondents.†

Court of Appeals

*No. 90-0469. Oral argument December 13, 1990.—Decided August 29, 1991.*

(Also reported in 474 N.W.2d 913.)

†Petition to review filed.

For the plaintiff-appellant the cause was submitted on the briefs of *Charles H. Barr* of *Charles H. Barr, S.C.,* of Milwaukee and oral argument by *Charles H. Barr.*

For the defendants-respondents the cause was submitted on the brief of *Virginia L. Newcomb* and *David J. Pliner* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison and oral argument by *Virginia L. Newcomb* and *David J. Pliner.*

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. Roger Hillman, a former inmate of the Columbia County Jail, appeals from a summary judgment dismissing his complaint against Columbia County and county jail employees (defendants). Hillman alleged that the individual defendants disclosed to jail employees and inmates the fact that Hillman had tested HIV positive.[1] We conclude that the trial court erred by granting summary judgment dismissing the following claims: (1) public disclosure of private facts, sec. 895.50(2)(c), Stats; and (2) violation of Hillman's constitutional right to privacy against the individual defendants. The trial court properly dismissed the following claims: (1) violation of Hillman's right to confidentiality of HIV test results, sec. 146.025, Stats; (2) invasion of privacy, sec. 895.50(2)(a), Stats; and (3) negligent and intentional infliction of emotional distress. We therefore

---

[1] A Human Immunodeficiency Virus (HIV) positive test indicates the presence of the HIV virus, which causes Acquired Immune Deficiency Syndrome (AIDS).

383

affirm in part, reverse in part, and remand with instructions for further proceedings.

## I. BACKGROUND

Hillman was incarcerated in the Columbia County Jail from September 1987 to February 1988. During that period, Hillman experienced various health problems. He was diabetic, received insulin, and monitored his blood-sugar level daily. He had tested positive for HIV antibodies in July of 1987, and experienced nausea, severe diarrhea and migraine headaches.

Hillman required hospitalization outside of the jail on several occasions. After his first hospitalization in September 1987, Hillman returned to the jail with an envelope containing a medical report. Hillman observed a number of jail employees open the envelope and handle the report.

Shortly thereafter, Hillman became aware that the fact that he was infected with the AIDS virus was general knowledge among jail employees and inmates. Believing that the source of the information was jail employees, Hillman brought this action against defendants alleging: (1) violation of his right to confidentiality of an HIV test result, sec. 146.025, Stats.; (2) invasion of privacy, sec. 895.50(2)(a), Stats., and public disclosure of private facts, sec. 895.50(2)(c), Stats.; (3) negligent and intentional infliction of emotional distress; and (4) violation of his constitutional right to privacy under 42 U.S.C. § 1983.

Defendants moved to dismiss for failure to state a claim and, subsequently, for summary judgment. The trial court granted summary judgment. Hillman appeals.

## II. STANDARD OF REVIEW

Section 802.08, Stats., governs summary judgment. Summary judgment methodology is well established. *See Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). Our review is *de novo* and independent of the trial court's decision. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). We initially examine the pleadings to determine whether a claim has been presented.

## III. STATE LAW CLAIMS

### A. *Violation of Section 146.025, Stats.*

Hillman alleges intentional[2] and negligent violation of sec. 146.025, Stats. Section 146.025 was amended, effective November 24, 1987, by 1987 Wis Act 70 to add the below underlined portions of sec. 146.025(5)(a)(intro.), 2., 3., 13., and (6) and delete the below stricken portions of sec. 146.025(5)(a)(intro.), 2., 3. and (6). Sections 20, 23, 27 and 36(1)(a), (b), 1987 Wis. Act 70. Hillman's complaint[3] contains allegations of disclosures occurring both before as well as after the effective date of the amendment. Section 146.025 protects the confidentiality of the results of an HIV test and provided in part:

---

[2]We note that Columbia County cannot be held directly liable for the intentional actions of the individual defendants. Section 893.80(4), Stats., provides in part: "No suit may be brought against any . . . governmental subdivision . . . for the intentional torts of its officers, officials, agents or employes. . . ."

[3]By "complaints," we refer to Hillman's first-amended complaint.

(5) **Confidentiality of Test.** (a) The results of a test for the presence of ~~an antibody to HTLV-III~~ HIV or an antibody to HIV may be disclosed only to the following persons or under the following circumstances, except that the person who receives a test may under sub. (2)(b) or (3) authorize disclosure to anyone:

1. To the subject of the test.

2. To ~~the test subject's~~ a health care provider who provides care to the test subject, including those instances in which a health care provider provides emergency care to the subject.

3. To an agent or employe of ~~the test subject's~~ a health care provider under subd. 2 who prepares or stores patient health care records, as defined in s. 146.81(4), for the purposes of preparation or storage of those records; provides patient care; or handles or processes specimens of body fluids or tissues.

4. To a blood bank, blood center or plasma center that subjects a person to a test under sub. (2)(a) . . ..

. . ..

13. To a sheriff, jailor or keeper of a prison, jail or house of correction or a person designated with custodial authority by the sheriff, jailer or keeper, for whom disclosure is necessitated in order to permit the assigning of a private cell to a prisoner who has a positive test result.[4]

. . ..

(6) **Expanded Disclosure of Test Results Prohibited.** No person to whom the results of a test for the presence of HIV or an antibody to ~~HTLV-III~~ HIV have been disclosed under sub. (5)(a) or (5m)

---

[4]With respect to sec. 146.025(5)(a)13., Stats., Hillman does not allege that the post-amendment disclosures were necessary to permit assigning him a private cell. Hillman occupied a private cell during his entire period of incarceration at the Columbia County Jail.

may disclose the test results except as authorized under sub. (5)(a) or (5)(m)[5]

Hillman alleges that jail personnel learned of his HIV test results by reading his medical files. He further alleges that these individuals disclosed his HIV positive status to other jail employees and inmates.

In *Van Straten v. Milwaukee Journal Newspaper-Publisher,* 151 Wis. 2d 905, 447 N.W.2d 105 (Ct. App. 1989), *cert. denied,* 110 S. Ct. 2626 (1990), a sheriff informed reporters that an inmate had exposed jailers to AIDS by slashing his wrists. *Id.* at 909, 447 N.W.2d at 107. The inmate argued that "he was deprived of his right to confidentiality under sec. 146.025[, Stats.,] when the newspapers published reports that he had AIDS." *Id.* at 921, 447 N.W.2d at 112. Rejecting the inmate's argument, the court stated:

> The trial court correctly determined that sec. 146.025 is directed toward health care providers and blood banks, and not toward newspapers. Section 146.025(6) prohibits further disclosure of test results by persons learning of the results from the health care provider or from the blood bank; however, the newspapers did not obtain the test results under either of those subsections. Therefore, summary judgment was appropriate.

*Id.* at 922, 447 N.W.2d at 112.

Arguing that the discussion of sec. 146.025, Stats., by the *Van Straten* court was cursory, Hillman contends that sec. 146.025 should be interpreted expansively to impose liability for disclosure of HIV test results not only to those persons and entities listed in sec.

---

[5]Section 146.025, Stats., has subsequently been repeatedly amended. We refer in this decision to the version of the statute in effect between September 1987 and February 1988.

146.025(5)(a), Stats., but also to members of the general public.

The cardinal rule in all statutory interpretation is to discern the intent of the legislature. *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 226, 453 N.W.2d 856, 867 (1990). The primary source of statutory interpretation is the language of the statute itself. *Robert Hansen Trucking, Inc. v. LIRC,* 126 Wis. 2d 323, 332, 377 N.W.2d 151, 155 (1985).

If a statute is plain and unambiguous, a court must apply its plain meaning, without resort to rules of construction. *Boles v. Milwaukee County,* 150 Wis. 2d 801, 813, 443 N.W.2d 679, 683 (Ct. App. 1989). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Sonnenburg v. Grohskopf,* 144 Wis. 2d 62, 65, 422 N.W.2d 925, 926 (Ct. App. 1988).

Section 146.025, Stats., does not specifically state *who* may be found liable for disclosure of HIV test results. We believe reasonable persons could disagree as to the scope of sec. 146.025. We thus examine the "scope, history, context, subject matter and object of the statute" to discern legislative intent. *Schinner v. Schinner,* 143 Wis. 2d 81, 89, 420 N.W.2d 381, 384 (Ct. App. 1988).

Section 146.025, Stats., was enacted in 1985. Section 1962gm, 1985 Wis. Act 29. The first entry in the drafting record is a letter from Representative David Clarenbach to Representative Jeff Neubauer, stating in part:

> Listed below are the points Rep. John Robinson and I would like included in the budget bill relating to confidentiality and the testing for Acquired Immune Deficiency Syndrome (AIDS) antibody. The purpose

of this amendment, which is patterned after the recently enacted California statute, is to guarantee the confidentiality of people whose blood is tested by private or public physicians, clinics or research facilities.

As enacted in 1985, sec. 146.025(1), Stats., provided in part:

> (b) No person may disclose the results of a test to screen for the existence of an antibody to the human virus HTLV–III causing acquired immunodeficiency syndrome, except that the test results may be disclosed as follows:
> 1. To the subject of the test.
> 2. To the health care provider . . ..[6]

Similarly, sec. 199.21 of the California Health and Safety Code provides in part:

> (a) Any person who negligently discloses results of a blood test to detect antibodies to the probable causative agent of acquired immune deficiency syndrome to any third party, in a manner which identifies or provides identifying characteristics of the person to whom the test results apply, except pursuant to a written authorization . . . shall be assessed a civil penalty . . ..

In *Urbaniak v. Newton*, 277 Cal. Rptr. 354 (Cal. Ct. App. 1991), the California appellate court rejected the argument that sec. 199.21 should be interpreted to extend liability beyond those persons having access to HIV test results. The court stated:

> Without questioning the legislative history calling for a broad interpretation of the statute, we

---

[6]Section 1962gm, 1985 Wis. Act 29. Section 146.025, Stats., was repealed and recreated by sec. 3, 1985 Wis. Act 73.

observe that appellant's interpretation would give the statute an extraordinarily long reach, affecting the transmittal of information about AIDS victims in a wide variety of social contexts. This sweeping scope is not supported by the statutory language. Liability is limited to any person who "discloses results of a blood test." Health and Safety Code section 199.21, subdivision (k) defines the word disclosed as follows: " 'Disclosed,' as used in this section, means to disclose, release, transfer, disseminate, or otherwise communicate all or any part of any *record* orally, in writing, or by electronic means to any person or entity." (Emphasis added.) The word "record" can only refer to the record of a blood test. The statutory language, in short, appears to apply only to disclosures by persons having access to the record of the results of a blood test.

Our interpretation is favored by the legislative history. For example, the emergency provision of the statute explains that it was intended "to protect the confidentiality of persons undergoing a blood test for" AIDS and thereby "to encourage individuals who are stricken with the disease to undergo treatment . . .." (Stats. 1985, ch. 22, § 4, p. 83). This legislative purpose will be served only to the extent that the statute is applied to persons and institutions that conduct tests for AIDS, assume responsibility for custody or distribution of test results, or use test results in connection with treatment of affected person[s].

Although *Urbaniak* was decided after the Wisconsin legislature enacted sec. 146.025, Stats., we find the court's reasoning supports the rationale advanced by the court in *Van Straten.*

Hillman neither alleges that the individual defendants conducted the HIV tests nor alleges that they were

390

authorized recipients of the test results under sec. 146.025(5)(a), Stats. We conclude he has not stated a claim against defendants under sec. 146.025.

## B. Invasion of Privacy

### 1. Intrusion Upon the Privacy of Another

Hillman contends that defendants' actions give rise to a cause of action for invasion of privacy under sec. 895.50(2)(a), Stats. Section 895.50(2)(a) defines invasion of privacy as:

> Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass.

In order to decide if Hillman has stated a cause of action, we must determine whether a file of medical records constitutes "a place" under sec. 895.50(2)(a), Stats.

Relying on sec. 652B of the Restatement (Second) of Torts (1977), Hillman contends that a file of medical records is "a place." Section 895.50(2)(a), Stats., "correlate[s] to a limited degree" with sec. 652B of the Restatement (Second) of Torts. *Zinda v. Louisiana Pacific Corp.*, 149 Wis. 2d 913, 928, 440 N.W.2d 548, 555 (1989). Section 652B of the Restatement (Second) of Torts provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.[7]

---

[7]Similarly, Prosser labels this type of invasion of privacy as

391

We agree with Hillman that reading a file of medical records could be considered a intrusion upon the "solitude or seclusion of another or his private affairs or concerns" under sec. 652B.[8]

However, the legislature did not use the phrase "solitude or seclusion of another or his private affairs or concerns" to describe the area of invasion under sec. 895.50(2)(a), Stats., but, rather, "a place." The ordinary meaning of a word may be found by reference to a recognized dictionary. *Village of Thiensville v. DNR*, 130 Wis. 2d 276, 283, 386 N.W.2d 519, 522 (Ct. App. 1986). "Place" is defined in Webster's Third New International Dictionary (1976), in part, as "2 a: an indefinite region or expanse . . . 3 a: a particular region or center of population . . . 4 a: a particular portion of a surface: specific locality." We believe the plain meaning of "a place" is geographical. It does not include a file of medical records. We conclude Hillman has not stated a claim under sec. 895.50(2)(a).

"[i]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs." Prosser, *Privacy,* 48 Calif. L. Rev. 383, 389 (1960).

[8] *See* Restatement (Second) of Torts sec. 652B comment b (1977) (noting that the intrusion "may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by forged court order to permit inspection of his personal documents."); *Birnbaum v. United States,* 588 F.2d 319, 323-26 (2d Cir. 1978) (opening plaintiff's sealed mail constitutes "intrusion.").

## 2. Public Disclosure of Private Facts

Hillman alleges that defendants' conduct violated sec. 895.50(2)(c), Stats. Section 895.50(2)(c), defines public disclosure of private facts as:

> Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

Section 895.50(2)(c) is nearly identical to sec. 652D of the Restatement (Second) of Torts (1977), which provides as follows:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that
> (a) would be highly offensive to a reasonable person, and
> (b) is not of legitimate concern to the public.

In *Zinda,* the court noted that a plaintiff must prove four elements in order to establish a cause of action for public disclosure of private facts: (1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosed must be private facts; (3) the private matter made public must be one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant must act either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed. 149 Wis. 2d at 929–30, 440 N.W.2d at 555.

393

The issue presented is whether the disclosure alleged by Hillman was sufficient to constitute "publicity" within the meaning of sec. 895.50(2)(c), Stats. Defendants maintain that an audience of jail employees and inmates is too limited to satisfy the "publicity" requirement.

Comment a. to sec. 652D identifies the degree of "publicity" required to give rise to an action for invasion of privacy:

> "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.

The publicity element has been examined by courts in other jurisdiction with differing results.[9]

---

[9]*See Wells v. Thomas*, 569 F. Supp. 426, 437 (E.D. Pa. 1983) (publication to employees at staff meetings and discussions between defendants and other employees insufficient to state a claim); *Beard v. Akzona, Inc.*, 517 F. Supp. 128, 133 (E.D. Tenn. 1981) (information disclosed to only five employees of corporation insufficient to establish publicity); *Bratt v. IBM Corp.*, 467 N.E.2d 126, 134 (Mass. 1984) (disclosure of private facts about an employee among other employees in same corporation constituted sufficient publication); *Beaumont v. Brown*, 257 N.W.2d 522, 528–32 (Mich. 1977) (letter by superior of lieutenant colonel in army reserve to "Personnel and Administration Center" alleged sufficient publicity to state a claim); *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892, 898 (Mo. 1959) (publicity require-

Construing the complaint liberally, we conclude oral communication among numerous employees and inmates of a jail is sufficient to constitute "publicity." Hillman's complaint states a claim for invasion of privacy under sec. 895.50(2)(c), Stats.[10]

## C. Negligent Infliction of Emotional Distress

Hillman alleges negligent infliction of emotional distress. Generally, to recover for negligent infliction of emotional distress, the "plaintiff's emotional distress must be manifested by physical injury." *Garrett v. City of New Berlin,* 122 Wis. 2d 223, 231, 362 N.W.2d 137, 142 (1985) (citation omitted). In *La Fleur v. Mosher,* 109 Wis. 2d 112, 116, 325 N.W.2d 314, 318 (1982), the court carved out an exception to the physical injury requirement, where the emotional distress resulted from negligent confinement of a fourteen-year-old girl in a prison cell. *Id.* at 119, 325 N.W.2d at 317. The court subsequently emphasized that "[o]ur holding in *La Fleur* was very narrow." *Garrett,* 122 Wis. 2d at 235, 362 N.W.2d at 144.

ment satisfied where a creditor, on three separate occasions, loudly demanded payment on an account in a public restaurant).

[10]We note in passing that, even if we concluded that the disclosure to jail employees and inmates was not sufficient to constitute "publicity" as defined in sec. 652D, there is authority for finding "publicity" where "a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed." *Miller v. Motorola, Inc.,* 560 N.E.2d 900, 903 (Ill. App. 1990) (citations omitted); *see McSurely v. McClellan,* 753 F.2d 88, 112 (D.C. Cir.), *cert. denied,* 474 U.S. 1005 (1985); *Beaumont,* 257 N.W.2d at 531.

Hillman does not allege physical injury. Nor does he allege that the emotional distress was a product of negligent confinement. We are an error-correcting court. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). Hillman requests that we create another exception to the physical injury requirement. We refuse to do so. We conclude Hillman has failed to state a claim for negligent infliction of emotional distress.

### D. Intentional Infliction of Emotional Distress

Hillman also alleges intentional infliction of emotional distress. To establish intentional infliction of emotional distress, a plaintiff must show: (1) that defendants' conduct was intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct was the cause of the plaintiff's injury; and (4) that the emotional distress was extreme and disabling. *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 695, 271 N.W.2d 368, 378 (1978).

Hillman's complaint states that he has "suffered severe mental distress." We need not address whether the allegation of "severe mental distress" is fatally conclusory, because Hillman nowhere alleges that the distress was disabling. We conclude Hillman has failed to state a claim for intentional infliction of emotional distress.

### E. Defendants' Answer

We next examine defendants' answer to determine whether a material factual issue is presented. *Homa v. East Towne Ford, Inc.,* 125 Wis. 2d 73, 81, 370 N.W.2d

592, 596 (Ct. App. 1985). Defendants' answer joined the issue by generally denying Hillman's factual allegations that prison employees discussed Hillman's HIV positive status with other prison employees and inmates.

Defendants assert that they are immune from suit because decisions made by jail employees regarding disclosure of Hillman's HIV positive status were quasi-judicial. Under sec. 893.80(4), Stats., no suit may be brought against a governmental body for the acts of its officers or employees "done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." The purpose of governmental immunity is to "ensure that courts will refuse to pass judgment on the policy decisions made by coordinate branches of government, if such a policy decision, consciously balancing risks and advantages, occurred." *Gordon v. Milwaukee County*, 125 Wis. 2d 62, 66, 370 N.W.2d 803, 805 (Ct. App. 1985) (citation omitted).

"The general rule is that a public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty." *Lister v. Board of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610, 621 (1976) (footnote omitted). Defendant James Smith was the sheriff of Columbia County while Hillman was incarcerated there and was responsible for supervising jail operations. The other individual defendants were employed as deputies and jailers.

Hillman alleges that several of the individual defendants escorted him to and from the hospital when his diabetes was treated. Others were responsible for maintaining Hillman's cell and feeding him. None of the individual defendants, Hillman maintains, were medical personnel or were proper recipients of medical information.

397

Jail employees' normal duties do not include disseminating an inmates' confidential medical status among non-medical jail employees and inmates. Defendants argue that jail employees had a "clear interest in knowing" Hillman's condition, because of their frequent contact with him. This may be true. However, the legislature has usurped the authority to determine who may be privy to HIV test results. Section 146.025, Stats. The individuals to whom Hillman alleged the individual defendants disclosed his HIV positive status do not fall within any of the exceptions to sec. 146.025(5)(a), Stats. The individual defendants' conduct was unauthorized and, as such, outside the scope of their official duties. We conclude Hillman has successfully alleged non-immune conduct on the part of the individual defendants.

### F. Defendants' Proof

We next examine the defendants' affidavits and other proof to determine whether they have made a *prima facie* case for summary judgment. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). Defendants' principal contention is that the jail employees never read Hillman's medical records and, thus, never disclosed his condition to anyone. They maintain that prison personnel and inmates deduced his condition from his chronic medical problems.

In opposition to the motion, Hillman submitted his depositional testimony. He deposed:

> Returning from University Hospital [after] being discharged and sent back to the Columbia County Jail, I was placed in one of the cells that are in the office area, the deputy's office . . ..

. . ..

And you could see through the food chutes . . . the deputy's desk where your paper work is handed in.

. . ..

[You] could see them reading your medical charts . . .. They were taking it, reading it and then putting it inside of a file cabinet that's right there in the office.

Hillman also submitted the deposition of Dr. Mark Cecil, a jail physician, who stated:

A. I told [Hillman] I found these records open in the jail . . ..

Q. Would you please tell me what happened in that incident?

A. I found the records. I put them in his medical chart immediately.

Q. What sort of records were they?

A. Records concerning his hospital stay.

Q. Where did you find them?

A. In the cabinet in the jail's office.

"Summary judgment is appropriate when material facts are not in dispute and when inferences which may reasonably be drawn from the facts are not doubtful and lead only to one conclusion." *Radlein v. Industrial Fire & Casualty Ins. Co.,* 117 Wis. 2d 605, 609, 345 N.W.2d 874, 877 (1984) (citations omitted). The affidavits submitted by the parties give rise to conflicting inferences, each reasonable, regarding whether defendants were the source of the disclosure of Hillman's HIV positive condition. We conclude that defendants have not established a

*prima facie* defense that they did not publish or disclose Hillman's HIV test results. Thus, the trial court erred by granting summary judgment dismissing Hillman's public disclosure of private facts claim.

## IV. 42 U.S.C. § 1983

### A. Constitutional Right to Privacy

Hillman alleges that defendants violated his constitutional right to privacy. We first examine whether Hillman has a constitutionally protected right to nondisclosure of his HIV positive status. If disclosure of Hillman's HIV positive status is not constitutionally prohibited, there is no "constitutional violation to support a section 1983 claim." *Doe v. Borough of Barrington,* 729 F. Supp. 376, 382 (D. N.J. 1990).

The United States Supreme Court has recognized that the fourteenth amendment extends protection to at least two different types of privacy interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599–600 (1977) (footnotes omitted). Cases examining the latter interest have involved "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis,* 424 U.S. 693, 713 (1976). The privacy interest implicated in this case concerns the former interest—"the right not to have an individual's private affairs made public by the government." *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir. 1980).

In *Woods v. White,* 689 F. Supp. 874 (W.D. Wis. 1988), *aff'd,* 899 F.2d 17 (7th Cir. 1990), the plaintiff

brought a § 1983 action against prison employees, alleging that they had violated his constitutional right to privacy by disclosing to non-medical staff and other inmates that plaintiff had tested positive for the AIDS virus. *Id.* at 874–75. The district court noted that, regarding the extent of the right to privacy in personal information, "[c]ourts have defined the scope of privacy rights on a case-by-case method, balancing the individual's right to confidentiality against the governmental interest in limited disclosure." *Id.* at 876 (citing *Plante v. Gonzalez*, 575 F.2d 1119, 1134 (5th Cir. 1978), *cert. denied*, 439 U.S. 1129 (1979)).

Denying defendants' motion for judgment on the pleadings, the court concluded:

> Given the most publicized aspect of the AIDS disease, namely that it is related more closely than most diseases to sexual activity and intravenous drug use, it is difficult to argue that information about this disease is not information of the most personal kind, or that an individual would not have an interest in protecting against the dissemination of such information. I find that plaintiff has a constitutional right to privacy in his medical records.

*Woods,* 689 F.2d at 876 (citation omitted; footnote omitted).

In *Doe v. Coughlin,* 697 F. Supp. 1234 (N.D. N.Y. 1988), the district court held that prison inmates' right to privacy were violated by a policy of involuntarily transferring inmates who had tested HIV positive to a segregated facility. *Id.* at 1236–37. Citing *Woods* with approval, the court held that "prisoners subject to this program must be afforded at least some protection against the non-consensual disclosure of their diagno-

sis." *Id.* at 1238 (citation omitted); *see Doe v. Borough of Barrington,* 729 F. Supp. at 382–85 (police officer violated family members' privacy rights by disclosing individual's HIV positive status to those with whom the individual had not even made casual contact). We conclude that Hillman has stated a claim for violation of his constitutional right to privacy.

> *B. Individual Defendants Smith, Zanow, Anacker, Gove and Zimmerman—Qualified Immunity*

To state a claim against the individual defendants under 42 U.S.C. § 1983 (1988),[11] Hillman must show: (1) that the conduct of which he complains was committed while defendants were acting under color of state law; and (2) that the conduct deprived him of rights, privileges or immunities secured by federal law or the United States Constitution. *Weber v. City of Cedarburg,* 129 Wis. 2d 57, 65, 384 N.W.2d 333, 338 (1986).

We concluded previously that Hillman's allegations stated a claim that he has been deprived of a right secured by the United States Constitution. Hillman alleges that during the disclosure, the individual defendants were acting in their capacity as jail employees. Hillman's complaint states a claim that defendants were acting under color of law.

---

[11]42 U.S.C. § 1983 (1988) provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

As an affirmative defense, the individual defendants allege that they are entitled to a defense of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (citations omitted).

Addressing a similar claim, the court in *Woods* stated:

> I think it would have been clear to a competent public official in 1986 that individuals had a constitutional right to privacy in information relating to AIDS. However, defendants' argument assumes that the conduct in question was part of their discretionary functions.
>
> . . ..
>
> Casual, unjustified dissemination of confidential medical information to non-medical staff and other prisoners can scarcely be said to belong to the sphere of defendants' discretionary functions. Therefore, the defense of qualified immunity is not available to defendants.

689 F. Supp. at 877 (citations omitted).

We agree. We conclude the individual defendants are not immune from suit under the qualified immunity doctrine. In addition, we conclude that the affidavits submitted by Hillman, discussed previously, are sufficient to raise disputed issues of material fact as to whether the individual defendants disclosed Hillman's HIV positive status to jail employees and inmates. We thus conclude that the trial court erred by granting sum-

mary judgment dismissing Hillman's constitutional right-to-privacy claim against the individual defendants.

## C. Columbia County

*Respondeat superior* may not serve as the basis for imposing § 1983 liability. *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 691 (1978). To maintain an action against Columbia County, Hillman must show that the actions that are alleged to be unconstitutional implement or were taken pursuant to a municipal policy or custom. *Id.* at 690–91. Municipal liability will attach only where there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).

Hillman alleges that Columbia County "developed and enforced inadequate policies and customs for staff and inmates at the Columbia County Jail, and . . . failed to train and supervise . . . employees of the Columbia County Jail."[12] In *City of Canton,* the plaintiff was arrested by the Canton Police Department and brought to the police station in a patrol wagon. Although the plaintiff's actions evidenced a need for immediate medical treatment, no medical attention was summoned. *Id.* at 381. Plaintiff alleged that she had been denied proper medical help because the police were not adequately trained. *Id.* at 382.

---

[12]Defendants do not argue that Columbia County is immunized by sec. 893.80(4), Stats., from intentional tort actions under 42 U.S.C. § 1983. Nor could they. Municipal tort immunity statutes may not be used as a defense to a federal civil rights claim. *See Felder v. Casey,* 487 U.S. 131, 138–153 (1988); *Graham v. Sauk Prairie Police Comm'n,* 915 F.2d 1085, 1092 n.5 (7th Cir. 1990).

The *City of Canton* Court held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. The question is:

> [W]hether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 390 (footnote omitted).

In support of its motion for summary judgment, Columbia County submitted a department policy statement, stating that "[m]edical records shall be maintained separately from confinement records, and shall be confidential." In addition, they submitted a policy article prepared in July 1986 by Dr. Mark Cecil, a jail physician, entitled "Preventing the Spread of the A.I.D.S. Virus in the Jail Setting." The article states, in part:

> C. Guidelines For Inmates Who Are Known Carriers of A.I.D.S. Virus
> 1. Confidentiality: By law (State Statutes 146.025, 146.81, 146.82), the diagnosis of A.I.D.S. or that an individual is an A.I.D.S. carrier is to be kept confidential. Jail staff (except for jail medical personnel) and any outside person who request such information may <u>not</u> be informed without the affected

inmate's permission or court order. [Emphasis in original.]

Cecil deposed that he made twenty copies of the article and "gave them all to Sheriff Ohnesorge, the previous sheriff here, to distribute them to all the staff and jailers. I also put one in the back of . . . a little booklet that has my orders to the jailers." In addition, Cecil stated that he personally conducted a training session of all jail employees regarding AIDS.

In opposition, Hillman submitted the affidavit of a jailer who stated that he could not recall receiving any information regarding AIDS. Hillman also submitted the depositional testimony of Cecil, who deposed that his recommendations did not constitute official jail policy.

Only where a failure to train "reflects a 'deliberate' or 'conscious' choice by a municipality," can it be held liable for such a failure under § 1983. *City of Canton,* 489 U.S. at 389. While Hillman's submissions may raise a question of whether Columbia County had adopted a policy of nondisclosure, the precise issue is whether Columbia County's actions amounted to "deliberate indifference."

We believe the evidence presented by defendants rebuts any reasonable inference that Columbia County was deliberately indifferent to Hillman's rights. The fact that Cecil had promulgated a policy statement evidences the county's awareness of the problem and attempt to deal with it. While other actions may have been desirable, failure to take them did not amount to deliberate indifference.

## V. SUMMARY

In summary, we conclude the trial court erred by dismissing the following claims on summary judgment: (1) public disclosure of private facts, sec. 895.50(2)(c), Stats; and (2) violation of Hillman's constitutional right to privacy against the individual defendants.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with instructions.

SUNDBY, J. *(concurring in part; dissenting in part).* I concur in all parts of the decision except, contrary to the majority, I conclude that Hillman states a claim against the defendants for their disclosure of the results of his HIV testing, contrary to sec. 146.025(5)(a), Stats. The majority concludes that sec. 146.025(5)(a) applies only to health care providers, blood banks, blood centers, plasma centers or persons to whom such entities have disclosed the results of a test for the presence of HIV. The majority concludes that this holding is required by *Van Straten v. Milwaukee Journal Newspaper-Publisher,* 151 Wis. 2d 905, 922, 447 N.W.2d 105, 112 (Ct. App. 1989), *cert. denied,* 110 S. Ct. 2626 (1990). I disagree.

The holding of *Van Straten* is very narrow. The court held that sec. 146.025(6), Stats., prohibits further disclosure of test results by persons learning of the results from the health care provider or the other enumerated entities. Section 146.025(6) prohibits the expanded disclosure of HIV test results. The section prohibits any person to whom the results of such a test have been disclosed under sub. (5)(a) or sub. (5m) from disclosing the test results, except as otherwise authorized. Subsection (5)(a) enumerates persons and entities to whom the results of an HIV test may be disclosed. Sub-

section (5m) applies to autopsies and the testing of certain corpses. The *Van Straten* court was correct in concluding that sub. (6) did not apply to the defendant newspapers because a newspaper is not one of the entities enumerated in sub. (5)(a) or sub. (5m). *Van Straten* did not, however, address whether sub. (5)(a) establishes a general confidentiality of HIV tests. I conclude that it does.

Section 146.025(5)(a), Stats., reads in part: "The results of a test for the presence of HIV . . . may be disclosed only to the following persons or under the following circumstances . . .." The majority would read the section to provide: "No health care provider, blood bank, blood center, or plasma center shall reveal the results of a test for the presence of HIV . . . except to the following persons or under the following circumstances . . .." The effect is to establish only a limited confidentiality of HIV tests. This is an unreasonable result which is contrary to the plain language of sec. 146.025(5)(a) and to the legislative history of sec. 146.025.

If there is ambiguity in sec. 146.025(5)(a), Stats., it is resolved by its legislative history. The legislation was requested by Representative David Clarenbach, speaker pro tem of the Assembly, and Representative John Robinson, in a memorandum of May 31, 1985 to Representative Jeff Neubauer. In that memorandum, Clarenbach stated:

> Listed below are the points Rep. John Robinson and I would like included in the budget bill relating to confidentiality and the testing for Acquired Immune Deficiency Syndrome (AIDS) antibody. The purpose of this amendment, which is patterned after the recently enacted California statute, is to guarantee the confidentiality of people whose blood is tested by

private or public physicians, clinics or research facilities. This amendment would:

. . ..
2. prohibit the disclosure of the results of the blood test in all circumstances except to the subject of the test, and then only if the subject agrees to being informed . . ..

The drafting records of sec. 146.025, Stats., show that the initial drafts provided that "no person" may disclose the results of an HIV test. Therefore, it can be argued that the legislature intended that the prohibition on disclosure would not apply to "any person" but only health care providers, blood banks, and blood and plasma centers, and persons to whom those entities had made authorized disclosures. There is, however, no evidence in the legislative drafting records to show that the legislature intended to provide only a limited confidentiality to HIV tests. Considerations of perceived clarity dictated the final form of the legislation. It is significant that sub. (5)(a) does not limit its application to certain entities whereas sec. 146.025(2)(a), Stats., provides that "[n]o health care provider, blood bank, blood center or plasma center may . . ." and sub. (4) provides in part, "[a] health care provider, blood bank, blood center or plasma center . . . shall . . .." Thus, the legislature referred to the specified entities when it dealt with duties which were exclusive to those entities but it did not continue that exclusivity when it provided for confidentiality.

I note that essentially the same legislative format is used in sec. 51.30, Stats., with respect to records of persons who are receiving or who at any time have received services for mental illness, developmental disabilities, alcoholism or drug dependence, and in sec. 146.82, Stats., which provides that all patient health care

409

records shall remain confidential. *See* secs. 51.30(4) and 146.82(2). Our construction of sec. 146.025(5)(a), Stats., will be persuasive authority in construing those statutes. I cannot accept that the legislature intended to accord any such records, including the results of HIV testing, only a limited confidentiality. I therefore respectfully dissent.