# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:            2022AP1871

Complete Title of Case:

**DAVID SIDOFF,**

        **PLAINTIFF-APPELLANT,**

   **V.**

**ROGER MERRY,**

        **DEFENDANT-THIRD-PARTY**
        **PLAINTIFF-RESPONDENT.**

---

| | |
|---|---|
| Opinion Filed: | August 3, 2023 |
| Submitted on Briefs: | April 13, 2023 |

---

| | |
|---|---|
| JUDGES: | Kloppenburg, P.J., Blanchard, and Nashold, JJ. |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kurt R. Anderson*, of *Zimmerman & Steber Legal Group, S.C.*, of Delafield. |
| Respondent ATTORNEYS: | On behalf of the defendant-third-party plaintiff-respondent, the cause was submitted on the brief of *Brent Eisberner* and *Dailey Johnson*, of *Levine Eisberner LLC* of Madison. |

COURT OF APPEALS
DECISION
DATED AND FILED

**August 3, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No.  2022AP1871**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020CV674

**IN COURT OF APPEALS**

---

**DAVID SIDOFF,**

  **PLAINTIFF-APPELLANT,**

 **V.**

**ROGER MERRY,**

  **DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT.**

---

APPEAL from an order of the circuit court for Rock County: JEFFREY KUGLITSCH, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

¶1   KLOPPENBURG, P.J. David Sidoff appeals an order granting Roger Merry's motion for summary judgment dismissing Sidoff's defamation claim. Sidoff alleges in this civil action in Rock County circuit court that a book

that Merry wrote contains false statements, specifically that Sidoff committed a murder. Merry's book, published in 2020, discusses the events relating to the murder of Ardelle Sturzenegger, whose body was found in 2005 in a field behind the home that Sidoff and his then-wife, Mary Sidoff, were renting in Green County.[1] Mary Sidoff was found guilty of Sturzenegger's murder at a jury trial in 2006. Merry is the attorney who represented Mary Sidoff at the trial, and in his book he states that it was Sidoff, not Mary Sidoff, who killed Sturzenegger.

¶2      The issue on appeal is whether Sidoff is a limited purpose public figure for purposes of Wisconsin defamation law and, therefore, is required to make the constitutionally required showing that Merry made the allegedly defamatory statements with actual malice. We affirm the circuit court's order granting Merry's motion for summary judgment dismissing Sidoff's defamation claim because: (1) the undisputed facts establish that Sidoff is a limited purpose public figure with respect to Sturzenegger's murder and, therefore, Sidoff must show actual malice; and (2) Sidoff does not dispute that he cannot point to evidence that Merry made the allegedly defamatory statements with actual malice.

## BACKGROUND

¶3      The following facts are undisputed for purposes of summary judgment.

---

[1] We refer to David Sidoff and Roger Merry by their last names, and to Mary Sidoff by her full name.

2

¶4      In October 2005, Sturzenegger's body was found wrapped in a tarp in a field behind the home that Sidoff and Mary Sidoff were renting.[2]  In September 2006, at a jury trial, Mary Sidoff was found guilty of first-degree intentional homicide of Sturzenegger, hiding a corpse, and theft from a person or corpse.  Merry represented Mary Sidoff at the trial.

¶5      In 2020, Merry published a book that he wrote entitled *Lies for Her Master.*  In this book Merry states that it was Sidoff, not Mary Sidoff, who murdered Sturzenegger.

¶6      In this action, Sidoff has sued Merry for defamation, alleging that Merry's statements in the book that Sidoff committed the murder and other crimes are false.

¶7      Merry moved for summary judgment dismissing Sidoff's defamation claim.  Merry argued that:  (1) Sidoff is a limited purpose public figure and, therefore, must show that Merry made the allegedly defamatory statements with actual malice; and (2) Sidoff did not allege actual malice in his complaint and the summary judgment materials do not support a claim that Merry made the statements

---

[2] The parties refer in their briefing to the details regarding Mary Sidoff's trial and conviction based on Wisconsin's CCAP (Consolidated Court Automation Programs) records pertaining to Green County Circuit Court Case No. 2005CF000149.  CCAP is a case management system provided by the Wisconsin Circuit Court Access program, which "provides public access online to reports of activity in Wisconsin circuit courts."  *State v. Bonds*, 2006 WI 83, ¶6, 292 Wis. 2d 344, 717 N.W.2d 133; *see also **Kirk v. Credit Acceptance Corp.***, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (taking judicial notice of CCAP records where the details regarding an action were not in the record).  Because the details of Mary Sidoff's conviction are not in the summary judgment materials, we take judicial notice of the CCAP records pertaining to the Green County action.  *See* WIS. STAT. § 902.01 (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

with actual malice. Sidoff opposed the motion, arguing that he is not a limited purpose public figure with respect to Sturzenegger's murder.

¶8 The circuit court determined that Sidoff is a limited purpose public figure with respect to Sturzenegger's murder. The court concluded that, because Sidoff did not claim actual malice, Merry's motion for summary judgment must be granted.

¶9 Sidoff appeals.

## DISCUSSION

### I. Applicable Standard of Review and Legal Principles

¶10 We first present the standard of review governing Sidoff's appeal of the circuit court's decision granting Merry's motion for summary judgment. We next provide context by summarizing basic background principles of defamation law. We then present the legal principles pertinent to the issue on appeal: whether Sidoff is a limited public purpose figure.

¶11 "Summary judgment is appropriate to determine whether there are any disputed factual issues for trial and to avoid trials where there is nothing to try." *Bay View Packing Co. v. Taff*, 198 Wis. 2d 653, 672, 543 N.W.2d 522 (Ct. App. 1995) (quoted source omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We review whether a party is entitled to summary judgment independently of the circuit court. *Bay View Packing*, 198 Wis. 2d at 672.

¶12    Summary judgment "may be particularly appropriate in defamation actions in order to mitigate the potential 'chilling effect' on free speech and the press that might result from lengthy and expensive litigation." *Id*. (quoting *Time, Inc. v. Hill*, 385 U.S. 374, 401-02 (1967)).

¶13    A plaintiff alleging defamation under Wisconsin law must generally prove three elements:  (1) a false statement; (2) that is communicated by speech, by conduct, or in writing to a person other than the person defamed; and (3) which is unprivileged and tends to harm one's reputation so as to lower the person in the estimation of the community or to deter third persons from associating or dealing with the person. *Donohoo v. Action Wisconsin Inc.*, 2008 WI 56, ¶37, 309 Wis. 2d 704, 750 N.W.2d 739.[3]

¶14    "In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the United States Supreme Court added a constitutional element to defamation actions that is dependent on the status of the plaintiff." *Bay View Packing*, 198 Wis. 2d at 674. Under the First and Fourteenth Amendments to the United States Constitution, a plaintiff who is a "public official" must prove, by clear and convincing evidence that the defamatory statement was made with "actual malice." *New York Times*,

---

[3] For additional context, we observe that our supreme court noted that some court of appeals opinions had listed four elements of defamation, following the Restatement (Second) of Torts § 558 (1981). *Donohoo v. Action Wisconsin Inc.*, 2008 WI 56, ¶37 n.8, 309 Wis. 2d 704, 750 N.W.2d 739 (citing *Van Straten v. Milwaukee Journal Newspaper-Publisher*, 151 Wis. 2d 905, 912, 447 N.W.2d 105 (Ct. App. 1989)); *see also Bay View Packing Co. v. Taff*, 198 Wis. 2d 653, 673, 543 N.W.2d 522 (Ct. App. 1995).  However, since 2008, this court has consistently listed the three elements listed in *Donohoo*.  *See e.g.*, *Laughland v. Beckett*, 2015 WI App 70, ¶22, 365 Wis. 2d 148, 870 N.W.2d 466 (citing *Ladd v. Uecker*, 2010 WI App 28, ¶8, 323 Wis. 2d 798, 780 N.W.2d 216); *Terry v. Journal Broadcast Corp.*, 2013 WI App 130, ¶14, 51 Wis. 2d 479, 840 N.W.2d 255 (citing *Mach v. Allison*, 2003 WI App 11, ¶12, 259 Wis. 2d 686, 656 N.W.2d 766). In *Donohoo*, our supreme court also noted that, "if the two sets of elements are at all different, such distinctions are not important in the present case" in which the analysis focused on the actual malice requirement.  *Donohoo*, 309 Wis. 2d 704, ¶¶36, 37 n.8.  Here too, any such distinctions do not matter to our analysis of the issue on appeal.

376 U.S. at 279-80; ***Donohoo***, 309 Wis. 2d 704, ¶38 (citing ***Masson v. New Yorker Magazine, Inc.***, 501 U.S. 496, 510 (1991)); ***Wiegel v. Capital Times Co.***, 145 Wis. 2d 71, 76, 426 N.W.2d 23 (Ct. App. 1988) (citing ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 255-56 (1986)). The actual malice standard "requires that the allegedly defamatory statement be made with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" ***Donohoo***, 309 Wis. 2d 704, ¶38 (quoting ***New York Times Co.***, 376 U.S. at 279-80); ***Bay View Packing***, 198 Wis. 2d at 674. Pertinent here, the United States Supreme Court has extended the constitutional actual malice standard to apply also to "public figure" plaintiffs. ***Curtis Pub. Co. v. Butts***, 388 U.S. 130 (1967).

¶15    An individual may be deemed a "public figure" plaintiff for "general" or "limited" purposes: "'[The person] may be a public figure for all purposes due to general fame or notoriety. More commonly, however, one assumes that status by involvement in a particular public issue or controversy and thereby becomes a public figure for a limited range of issues.'" ***Bay View Packing***, 198 Wis. 2d at 675 (quoting ***Wiegel***, 145 Wis. 2d at 82). A public figure for general purposes is a person who is a well-known celebrity or whose name is a "household word" and the person's words and deeds are followed by the relevant portion of the public because that portion of the public deems the person worthy of its attention. ***Bay View Packing***, 198 Wis. 2d at 676. Merry does not argue that Sidoff is a public figure for general purposes.

¶16    People who are "'not generally famous or notorious,' [] may become public figures for a 'limited purpose' because of their involvement in a 'particular public controversy.'" ***Bay View Packing***, 198 Wis. 2d at 676 (quoting ***Wiegel***, 145 Wis. 2d at 82). Such a person is known as a "limited purpose public figure." ***Bay View Packing***, 198 Wis. 2d at 676 (citing ***Van Straten v. Milwaukee Journal***

*Newspaper-Publisher*, 151 Wis. 2d 905, 913-14, 447 N.W.2d 105 (Ct. App. 1989)); *see also* ***Biskupic v. Cicero***, 313 Wis. 2d 225, 239, 756 N.W.2d 649 (Ct. App. 2008) ("Limited purpose public figures [] are otherwise private individuals who have a role in a specific public controversy.")  A person may become a limited purpose public figure because the person "voluntarily thrust" himself or herself into a particular public controversy, or because the person's activities "almost inevitably" "thrust [the person] into a central role in a controversy." ***Wiegel***, 145 Wis. 2d at 85-86; ***Erdmann v. SF Broad. of Green Bay, Inc.***, 229 Wis. 2d 156, 164, 599 N.W.2d 1 (Ct. App. 1999) (stating that a person who is drawn into or injects himself or herself into a particular public controversy becomes a public figure for a limited purpose because of the person's involvement in the controversy).

¶17  Our supreme court has established a two-prong test to determine whether a defamation plaintiff is a limited purpose public figure:  "(1) there must be a public controversy; and (2) the court must look at the nature of the plaintiff's involvement in the public controversy." ***Bay View Packing***, 198 Wis. 2d at 678 (citing ***Denny v. Mertz***, 106 Wis. 2d 636, 649-50, 318 N.W.2d 141 (1982)).  "[T]his court expanded on ***Denny*** and provided a three-step analysis to be used when considering the second prong of the ***Denny*** test":  (1) isolate the controversy at issue; (2) examine the plaintiff's role in the controversy to determine whether it is more than trivial or tangential; and (3) determine whether the alleged defamation was germane to the plaintiff's participation in the controversy. ***Bay View Packing***, 198 Wis. 2d at 678 (citing ***Wiegel***, 145 Wis. 2d at 82-83).

¶18  The ***Wiegel*** court derived this three-step analysis under the second prong of the ***Denny*** test from federal case law interpreting language by the United Stated Supreme Court. ***Wiegel***, 145 Wis. 2d at 82-84.  Under this approach, a person may become a limited purpose public figure either by "voluntary injection" into a

7

controversy or by being "'*drawn into* a particular public controversy.'" *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351). The *Wiegel* court explained that the focus in *Denny* was on the "voluntariness" of the plaintiff's entry into the public fray at issue and, thus, the court was concerned only with the "voluntary injection" aspect. *Wiegel*, 145 Wis. 2d at 88. In order to address both aspects of the issue, the three-step analysis presents an objective test that assesses the facts about the plaintiff's relationship to the controversy. *See id.* at 85 (the three-step analysis focuses on "the plaintiff's role in the public controversy rather than on any desire for publicity").

¶19    The determination of whether a person is a limited purpose public figure is a question of law for the court to decide on summary judgment, if there are no genuine issues of material fact, or after an evidentiary hearing before trial. *Bay View Packing*, 198 Wis. 2d at 676; *see also Erdmann*, 229 Wis. 2d at 165 ("Because a plaintiff's status controls whether [the person] must prove actual malice, the question whether a person is a limited purpose public figure should be resolved first and is a question of law.") (citing *Lewis v. Coursolle Broad.*, 127 Wis. 2d 105, 119, 377 N.W.2d 166 (1985)).

¶20    "If the plaintiff is determined to be a limited purpose public figure, the court must then determine whether the evidence in the summary judgment record could support a reasonable jury finding that plaintiff has shown actual malice." *Erdmann*, 229 Wis. 2d at 165; *Bay View Packing*, 198 Wis. 2d at 677 (If a plaintiff is determined to be a limited purpose public figure, "the dispositive factual dispute then becomes whether the plaintiff's summary judgment materials show 'actual malice' on the part of the defendant."). "If the plaintiff does not meet this burden [to show actual malice], the defamation claim should be dismissed as

8

legally insufficient because it is quite clear that under no circumstances can the plaintiff recover." ***Id.***

## II. Analysis

¶21 As stated, Sidoff does not claim actual malice. Rather, Sidoff challenges only the circuit court's determination that he is required to prove actual malice because he is a limited purpose public figure. We first present additional undisputed facts pertinent to that issue and then explain our conclusion that, applying the legal principles articulated above, the undisputed facts establish that Sidoff is a limited purpose public figure in connection with the topic of Merry's book, the murder.

### A. Additional Undisputed Facts

¶22 In the investigation that followed the discovery of Sturzenegger's body on property rented by Sidoff and Mary Sidoff, Sidoff was interviewed at least two to three times by police. Sidoff owned the firearm that was used to murder Sturzenegger. Sidoff was subpoenaed to appear at Mary Sidoff's trial and, when he took the stand to testify, he invoked his Fifth Amendment right.

¶23 In June 2007, Sidoff pleaded no contest to two misdemeanor offenses relating to the murder and the investigation: obstructing an officer and receiving stolen property.

¶24 The events surrounding Sturzenegger's murder, including the above facts, were reported in local and regional publications between 2005 and 2007. The local press covered both the investigation and Mary Sidoff's trial. Local and regional publications also reported on Mary Sidoff's testimony at trial that it was Sidoff, not she, who murdered Sturzenegger. The local press further reported that

Mary Sidoff wrote a letter to the circuit court after her conviction stating that she had lied at trial and that Sidoff "had nothing to do with" the murder. The local press also reported on the charges brought against Sidoff and his pleas to the two offenses.

¶25     Sidoff was never approached by members of the press, nor did he provide any interviews or statements regarding the murder to the press. Sidoff moved away from the area after the murder and did not attend the trial of Mary Sidoff.

### B. Whether Sidoff is a limited purpose public figure

### 1. A public controversy

¶26     Under the first prong of the ***Denny*** test we examine whether the defamation claim here involves a "public controversy." ***Denny***, 106 Wis. 2d at 649-50. "Dispositive of this factor is whether the dispute or controversy has 'an impact outside of those immediately interested' in the dispute." ***Bay View Packing***, 198 Wis. 2d at 679 (quoting ***Denny***, 106 Wis. 2d at 650). The controversy at issue must be one that "'was being debated publicly'" and that "'affects the general public or some segment of it in an appreciable way.'" ***Id.*** (quoting ***Waldbaum v. Fairchild Publ'ns, Inc.***, 627 F.2d 1287, 1296-97 (D.C. Cir. 1980)).

¶27     Here, the undisputed facts establish that Sturzenegger's murder affected more than just the individuals immediately involved in the crime and their families, and was being publicly discussed throughout and after the subsequent investigation and trial. The articles written about the murder that were submitted on summary judgment date from October 2005 to June 2007 and appeared in both online and print publications and in the local and regional press. At least one of the articles published online, headlined "Mary Sidoff found guilty of murder," included

a comment section in which individuals engaged in a public discussion about the contents of the article. Some of the comments specifically mentioned Sidoff and relayed the commenters' differing opinions regarding Sidoff's possible involvement in the crime. The articles also reported that there was, not surprisingly, significant police activity in the investigation of the murder.

¶28 The articles reflect extensive public interest in, concern over, and discussion of the murder and the people who were potentially or actually involved in the murder. The articles also indicate the effect of this dramatic crime on the local and regional communities. The public would naturally have been concerned first when Sturzenegger was reported missing and then when her body was found in the field, continuing through the identification of a suspect and her trial and conviction. The public would equally naturally have been concerned when Sidoff was charged with and then pleaded to crimes connected with the murder. All of these aspects created the public interest in this particular crime.

¶29 "Criminal activity can generate a controversy which is at the height of public consciousness and which causes significant public reaction." *Erdmann*, 229 Wis. 2d at 160-63, 166 (concluding that a person was a limited public figure when he had been accused of and subsequently arrested for shooting a teenager, but was released the day after the arrest when the teenager confessed to shooting himself). The *Erdmann* court rejected the argument that "there is no public controversy when the issue is solely an allegation and investigation of criminal conduct." *See id.* at 166-67. In that case, the charges, arrest, investigation, and release generated an intensive response by law enforcement, aroused concern and interest among the communities in the area, and were widely reported in the media. *Id.* at 166. Similarly here, although Sidoff was not arrested or charged with Sturzenegger's murder, he was a subject of law enforcement's investigation of the murder, was

11

accused of being the killer by Mary Sidoff at trial, invoked the Fifth Amendment when called to testify at trial, and was charged with and pleaded no contest to criminal conduct related to the murder, all of which was subject to public reporting and discussion. The articles establish that Sidoff's connection to the crime was "at the height of public consciousness" and "cause[d] significant public reaction." *See id.* We conclude that, based on these undisputed facts, the first prong of the *Denny* test, whether there is a public controversy, is met.

¶30 Sidoff argues that *Erdmann* is inapposite because it involves a "media defendant." We assume that Sidoff is referring to language in *Denny* adopting the constitutional "actual malice" standard for public official and public figure plaintiffs and stating that "[t]he supreme court has not ruled as to whether [that standard] … appl[ies] to all defendants, or just media defendants." *Denny*, 106 Wis. 2d at 660. While the court in *Denny* did not define "media defendant," it did suggest that the term embraces any entity that publishes or broadcasts an alleged defamatory statement. *Id.* (explaining that the constitutional actual malice standard properly applies when "[a] defamation … is published or broadcast" because it "gets infinitely greater circulation and can do the defamed person much greater harm"). Sidoff does not explain why Merry, by publishing the book that contains the allegedly defamatory statements, is not also entitled to the same protection of the constitutional actual malice standard as is a media defendant. More simply stated, Sidoff does not explain why the term "media defendant" does not include a book publisher nor does he provide any legal authority to support such a proposition.

¶31 Further, assuming without deciding that Merry is a non-media defendant, the court in *Denny* did not reach the issue of whether the constitutional actual malice standard that applies when a plaintiff is a public figure does not apply when the defendant is a non-media defendant. The court concluded only that a

private person's defamation claims against another private person should be adjudicated without applying the constitutional actual malice standard. *Id.* at 660-66. Thus, the court did not address the effect of the defendant's status as a media or non-media defendant when the plaintiff is a public official or public figure. *Id.* That is, the ruling in ***Denny*** was only that the plaintiff was a private person suing another private person, which took the actual malice issue out of the case.

¶32 In addition, we consider persuasive an opinion of the United States Court of Appeals for the Seventh Circuit, which concludes that, under Wisconsin law, at least certain non-media defendants are entitled to the same actual malice protection as media defendants. In ***Underwager v. Salter***, 22 F.3d 730, 732 (7th Cir. 1994), the defamation plaintiffs sued a psychologist who had been interviewed as part of a television program and a prosecutor who presented the tape of that program at workshops for other prosecutors. The plaintiffs argued that they need not establish actual malice because neither of the defendants "is a reporter or the publisher of a newspaper." *Id.* at 734. The court disagreed. *Id.* at 734-35. The court reviewed Wisconsin case law and stated that, "Cases since ***Denny*** have made it clear that a public figure must establish that the defendant acted with actual malice." ***Underwager***, 22 F.3d at 734. The court continued, "None of the cases we could find suggests that Wisconsin imposes a lesser burden on a public figure suing a psychologist or prosecutor than on one suing a reporter." *Id.*

¶33 The court noted that the plaintiffs "offer[ed] no reasons to suppose" that Wisconsin courts would establish a distinction between media and non-media defendants for purposes of applying the actual malice standard in public figure cases. *Id.* The court concluded that the public interest in providing reporters with the actual malice protection when reporting on public controversies extends equally to "scholars and prosecutors." *Id.* at 735. The court reasoned that exposing such

13

persons to large damage awards may be more likely to lead to silence on public controversies than would comparable awards against defendants in the media business. *Id.*

¶34     Similarly here, Sidoff offers "no reasons to suppose" that, under Wisconsin law Merry, who was the defense attorney at the trial of a dramatic crime and who has published a book about that trial and crime, is not entitled to the actual malice protection afforded media defendants in public figure cases. *See id.* at 734-35.

¶35     In sum, Sidoff fails to provide us with a definition of "media defendant," which in 2023 would presumably be considerably more difficult to provide than it would have been before the digital age.  Sidoff does not explain why Merry, the publisher of the book that contains allegedly defamatory statements, is not a media defendant under any possible definition.  Sidoff also does not explain how the distinction could matter to our analysis of whether there is a public controversy, or cite binding authority that conditions the application of the constitutional actual malice standard on the status of the defendant rather than only on the status of the plaintiff.  For all of these reasons, we reject whatever argument Sidoff means to make as unsupported by legal authority.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (citation omitted)).

¶36     Sidoff also bases an argument on timing.  He argues that, even if there was a public controversy in 2005 to 2006, there is not presently a public controversy because Merry has not shown that "the alleged public controversy lasted beyond the

time of the trial of Mary Sidoff in 2006."[4]  In support of this argument, Sidoff cites to *Denny*, 106 Wis. 2d 636, and *Wiegel*, 145 Wis. 2d 71.  However, we do not discern, and Sidoff does not cite, any language in *Denny* or *Wiegel* that creates a limit on the amount of time that events may remain public controversies for purposes of determining who is a limited purpose public figure.

¶37  Sidoff's citations to both of those cases address different issues. Sidoff cites language in *Denny* that "a person may not be made into a public figure by the very publication which defames him."  *Denny*, 106 Wis. 2d at 651 (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)).  However, in *Hutchinson* there was no public controversy before the allegedly defamatory statement was made. *Hutchinson*, 443 U.S. at 135; *Denny*, 106 Wis. 2d at 647.  Here, we do not rely on the fact of Merry's publication of the book in 2020 to determine that a public controversy exists; rather, as explained above, the public controversy at issue long predated that publication.  Sidoff also cites language in *Denny* and *Wiegel* that addresses the second factor, Sidoff's involvement in the controversy, which we discuss below, considering whether the plaintiffs in those cases had access to the media to rebut the alleged defamation.  *Denny*, 106 Wis. 2d at 650; *Wiegel*, 145 Wis. 2d at 83-84.  In neither case does the court state that the passage of time following a public controversy dissipates or nullifies the existence of a public controversy in this context.

¶38  Sidoff also supports his timing argument by citing to the court's statement in *Lewis*, 127 Wis. 2d at 115-16, that, "We by no means conclude that 'once a public official, always a public figure.'"  However, Sidoff's reliance on that

---

[4]  We note that Sidoff appears to disregard that he entered his pleas to crimes related to the murder in February 2007 and was sentenced for those crimes in June 2007.

language is misplaced. The court in that case concluded that the plaintiff, who engaged in misconduct while serving in the state assembly, had achieved a widespread level of "notoriety" that made him a general purpose public figure ("a public figure for all purposes"). *Id.* at 117. The court explained that the public interest in the plaintiff which arose when he held public office, regarding his conduct while in public office, continued after he left public office. *Id.* at 116-17. Here, we conclude that Sidoff is a limited purpose public figure with respect only to Sturzenegger's murder. As in *Lewis*, the notoriety from Sidoff's association with that widely publicized murder in 2005 to 2007 brings with it public scrutiny and discussion that remain relevant.

¶39 Furthermore, we consider persuasive the following observation of a federal appellate court: "The Supreme Court has explicitly declined to address the question 'whether or when an individual who was once a public figure may lose that status by the passage of time.' The [federal circuit courts] addressing the issue have indicated that an individual who was once a public figure with respect to a controversy remains a public figure for latter commentary on that controversy." *Milsap v. Journal/Sentinel, Inc.*, 100 F.3d 1265, 1269 (7th Cir. 1996) (quoting *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 166 n.7 (1979)).

¶40 In sum, we conclude that, on the summary judgment record here, Sidoff remains a limited purpose public figure for purposes of the specific controversy at issue, even though the main events of the controversy occurred in 2005 to 2007.

## 2. Sidoff's involvement in the public controversy

¶41 The second prong of the *Denny* test addresses the nature of Sidoff's involvement in the public controversy. *Denny*, 106 Wis. 2d at 650. As stated above,

*Wiegel* provides a three-step analysis for addressing this prong. *Wiegel*, 145 Wis. 2d at 82-83.

¶42     First, we isolate the public controversy with respect to the alleged defamatory statements. *Id.* at 83. This case involves the controversy centering on Sturzenegger's murder along with the ensuing investigation, trial, and post-trial events, and what role Sidoff played in those events. Sidoff makes no argument to the contrary.

¶43     Second, we address whether Sidoff's role in the controversy is more than trivial or tangential. *Id.* at 83. As stated, one way by which people may become limited purpose public figures is by "thrust[ing] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345; *Denny*, 106 Wis. 2d at 645-46. In addition, "as the Supreme Court recognized in *Gertz*, 'it may [also] be possible for someone to become a public figure through no purposeful action of [the person's] own.'" *Bay View Packing*, 198 Wis. 2d at 682 (quoting *Gertz*, 418 U.S. at 345). For example, persons may become involuntary public figures without their consent or will, purely through bad luck, or by being drawn into public controversies. *Bay View Packing*, 198 Wis. 2d at 682-83. In *Bay View Packing*, the plaintiffs did not want publicity about, nor did they thrust themselves into, a controversy concerning the contamination of water that ultimately contaminated their food products. *Id.* at 683. This court concluded that a plaintiff's desire for publicity or voluntary acts are not the focus of the analysis; rather, the focus of the analysis is on the plaintiff's role in the public controversy. *Id.*

¶44     Here, as Sidoff argues, it is undisputed that Sidoff did not willingly thrust himself into the controversy, assuming without deciding that he did not play

17

any role in the murder or its cover up. He did not provide statements to the press or engage in interviews beyond what was requested by the police, and he left the area of the murder and moved to a different city after the murder took place. As Sidoff argues, it is undisputed that all of these facts support the conclusion that he "made no attempt to involve himself in the controversy or publicity surrounding the murder of Sturzenegger."

¶45 However, Sidoff's reliance on these facts fails to take into account the possibility that Sidoff is an *involuntary* limited purpose public figure. The undisputed facts demonstrate that, even though Sidoff avoided publicity related to the controversy, he was the subject of multiple articles and public discussion over the course of the discovery of the murder, the investigation, the trial, and post-trial events. The following are facts closely related to the controversy that render Sidoff's role more than trivial or tangential to the overall controversy, even though he did not invite public attention to them: he rented with Mary Sidoff the property where Sturzenegger's body was found; he owned the gun that was used in Sturzenegger's murder; he pleaded no contest to the charges of obstructing and receiving stolen property related to the murder; and Mary Sidoff accused Sidoff of the murder at the trial and then recanted that accusation post-trial. *See Wiegel*, 145 Wis. 2d at 73, 85-86 (concluding that Wiegel's activities relating to erosion and pollution problems at Yellowstone Lake "inevitably put him into the vortex of a public controversy" even if he did not "voluntarily thrust himself into the dispute," and that his "desire—or lack of desire—to draw attention to himself is irrelevant"); *Bay View Packing*, 198 Wis. 2d at 683 (concluding that the plaintiffs were involuntary limited purpose public figures, even though they were reluctant participants and the events underlying the public controversy could be considered just "sheer bad luck"); *Van Straten*, 151 Wis. 2d at 915 ("that [plaintiff] never

18

intended to draw public attention to himself … is irrelevant" to whether his role was more than trivial or tangential to the overall controversy).

¶46  Sidoff argues that he has not had access to the press to rebut the defamation and that this weighs against determining that his role in the controversy surrounding Sturzenegger's murder is more than trivial or tangential.  We now explain why we conclude that this argument rests on an unproven premise and that this factor does not count in his favor.

¶47  Sidoff quotes passages in *Denny*, *Wiegel*, and *Gertz* stating that access to the press is one factor to consider in deciding whether an individual is a limited purpose public figure.  *See Denny*, 106 Wis. 2d at 648 n.17 ("Access to the media, although often an accout[re]ment of public figure status and part of the rationale for distinguishing a public figure from the more vulnerable private individual who generally lacks access, is certainly not determinative of public figure status."); *Wiegel*, 145 Wis. 2d at 84-85, 88 (discussing the applicable limited purpose public figure analysis as including factors other than access to the media, and subsequently noting only that access to the media to rebut the alleged defamation is relevant to but not "the touchstone" in the determination).

¶48  However it directly undermines Sidoff's argument that the undisputed facts in the summary judgment materials, summarized above, show that he has intentionally avoided the media and actively chosen not to make public statements related to the murder.  Indeed, it would appear that over the years since 2005 Sidoff has had any number of channels through which he could have made public statements.  The entire premise of his argument appears to be without support.  It is undisputed that he never approached the press, but there is no reason to think that if he had he would not have been able to give his version of relevant events.

19

¶49    The cases Sidoff cites do not support his position on the access-to-media point.  In ***Denny***, the allegedly defamatory publication addressed Denny's role in a corporate dispute and the court concluded that Denny's business decisions did not give him access to the media.  ***Denny***, 106 Wis. 2d at 650.  Here, Sidoff gained public attention due to his connection with a murder investigation and he was the subject of multiple front page print articles and online articles over the course of more than one year by virtue of that connection.

¶50    Similarly, Gertz was the lawyer for an individual in a highly publicized murder but Gertz was not at the forefront of the public controversy and provided only typical legal services.  ***Gertz***, 418 U.S. at 327.

¶51    In ***Wiegel***, Wiegel was contacted by the press and took the opportunity to make public statements multiple times, and this court determined that this voluntary engagement in the controversy was relevant to show that Wiegel had access to the media.  ***Wiegel***, 145 Wis. 2d at 88-89.  Wiegel made a different decision than Sidoff and chose to engage with the press, but that does not mean that Sidoff could not have provided statements that would have been reported in the press.

¶52    The third step in our analysis of the involvement prong of the ***Denny*** test addresses "whether 'the alleged defamation was germane to the plaintiff's participation in the controversy.'"  ***Bay View Packing***, 198 Wis. 2d at 684 (quoted source omitted).  Sidoff does not identify the specific statements in Merry's book that he alleges are defamatory beyond the first sentence of the book.  That sentence reads, "David Sidoff murdered Ardelle Sturzenegger on Friday, October 14th, between the hours of 8:30 p.m. and 10 p[.]m."  This sentence clearly pertains to Sidoff's participation in the controversy regarding Sturzenegger's murder.  Sidoff

points to no evidence in the summary judgment materials that shows that the other allegedly defamatory statements in the book do not similarly pertain to his alleged connection with the murder. Accordingly, we conclude that the undisputed facts establish that the allegedly defamatory statements are germane to Sidoff's involvement in the controversy.

¶53 In sum, we conclude that the undisputed facts establish that Sidoff is a limited purpose public figure and, therefore, he must show that the alleged defamatory statements were made with actual malice. Because Sidoff does not contest that the summary judgment materials do not show "actual malice," Sidoff cannot recover under the circumstances present here and the circuit court properly granted Merry's motion for summary judgment. *See **Bay View Packing***, 198 Wis. 2d at 686-87.

## CONCLUSION

¶54 For the reasons stated, we conclude that Merry is entitled to summary judgment and, therefore, we affirm.

*By the Court.*—Order affirmed.