COURT OF APPEALS
DECISION
DATED AND FILED

August 27, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP993**

STATE OF WISCONSIN

Cir. Ct. No. 2007CV13965

IN COURT OF APPEALS
DISTRICT I

TRI-CORP HOUSING, INC.,

THIRD-PARTY PLAINTIFF-APPELLANT,

V.

ROBERT BAUMAN ALDERMAN,

THIRD-PARTY DEFENDANT-RESPONDENT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: PEDRO A. COLÓN, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Tri-Corp Housing, Inc. appeals from the judgment and order dismissing its claims after the circuit court granted Robert Bauman's motion to change the jury's answers in its verdict in the defamation action Tri-Corp brought against Bauman.  Tri-Corp argues that the circuit court erred in three ways.  First, when the court found that Tri-Corp was a public figure, which meant it had to prove "actual malice" to prevail.  Second, when the court concluded that there was insufficient evidence that Bauman acted with actual malice when he defamed Tri-Corp.  Third, if a new trial were ordered, Tri-Corp's tortious interference claim, which had been dismissed in a directed verdict, should be tried.  Upon review, we reject Tri-Corp's arguments and we affirm.

## BACKGROUND

¶2     This case has a long and convoluted procedural history and we recite only relevant background information.  In November 2007, the Wisconsin Housing and Economic Development Authority (WHEDA) filed a complaint to foreclose upon a mortgage taken by Tri-Corp for two multi-family parcels:  West Samaria, located in the 2700 block of West Richardson Place in Milwaukee, and New Samaria, located in the 600 block of West Beloit Road in West Allis.  Tri-Corp executed the mortgage in 2003 and it operated both facilities as housing for cognitively disabled individuals.  The complaint alleged that Tri-Corp had not made all required mortgage payments.

¶3     Tri-Corp answered the foreclosure complaint with counterclaims of conspiracy and tortious interference with contract against WHEDA and City of Milwaukee Alderman Robert Bauman.  Tri-Corp alleged that WHEDA was not foreclosing in good faith, but acting in concert with Bauman, who had publically expressed displeasure about the facility.  Tri-Corp alleged that Bauman met with

representatives from WHEDA, who then actively discouraged Milwaukee County from placing individuals with cognitive disabilities under the County's care at West Samaria. It further alleged that in mid-November 2007, WHEDA notified Tri-Corp that it would issue a press release indicating that Tri-Corp agreed that the West Samaria facility should be closed. Tri-Corp protested that the release would be false, but WHEDA published it anyway. Tri-Corp alleged that it requested, unsuccessfully, that WHEDA separate the mortgages for West Samaria and New Samaria, a facility with nearly 100% occupancy. Tri-Corp further alleged that WHEDA refused to allow it to bring the loan current by using a reserve account or by using proceeds from the sale of another property.

¶4      West Samaria was operated with a special use permit from the City of Milwaukee, a permit that Bauman publicly opposed. The record reflects the death of two residents of West Samaria occurred during the controversy over West Samaria's operation in Milwaukee. First, in July 2004, resident David Rutledge was assaulted by a street gang near the facility. Another resident helped Rutledge get to West Samaria, where a security guard called 911 and Rutledge was transported to a hospital, where he died a few days later. Second, in 2007, resident Joseph Droese died of natural causes in his room, but his death was not discovered until four days later. Droese was placed at West Samaria through Milwaukee County and a caseworker was supposed to regularly check on him.

¶5      Tri-Corp's claims against WHEDA were litigated separately from its claims against Bauman, and we focus on the procedural history with Bauman.[1] In

---

[1] In January 2010, the circuit court granted WHEDA's motion for summary judgment and dismissed Tri-Corp's counterclaim, with prejudice, a decision affirmed by this court in March 2011. *WHEDA v. Tri-Corp Hous., Inc.*, No. 2010AP418, unpublished slip op. (WI App Mar. 8, 2011).

May 2010, the circuit court granted Bauman's motion for summary judgment and dismissed Tri-Corp's claims with prejudice. In May 2011, this court affirmed the judgment on the conspiracy claim, but reversed on the tortious interference of contract claim and remanded to resolve issues of material fact. *WHEDA v. Tri-Corp Hous., Inc.*, No 2010AP1443, unpublished slip op., ¶30 (WI App May 10, 2011).

¶6    On remand, in February 2012, Tri-Corp filed an amended third-party complaint against Bauman alleging tortious interference with contract and defamation, which it further amended in February 2018.[2] In July 2019, the circuit court dismissed three of Tri-Corp's defamation claims upon Bauman's motion for summary judgment on grounds of absolute privilege because the statements were made "in a quasi-judicial proceeding" to the City of Milwaukee Board of Zoning

---

[2] Tri-Corp also alleged a violation of 42 U.S.C. § 1983 in the remand filing. Bauman removed Tri-Corp's claims to the federal court. In January 2014, the United States District Court for the Eastern District of Wisconsin granted Bauman's motion for summary judgment dismissing the § 1983 claim, and declined to exercise supplemental jurisdiction over the state law claims. *See Tri-Corp Hous., Inc. v. Bauman*, No. 12-C-216, 2014 WL 238975 (E.D. Wis. Jan. 22, 2014), aff'd, 826 F.3d 446 (7th Cir. 2016). The case was remanded to the Milwaukee County Circuit Court.

In March 2018, Bauman moved for partial summary judgment on the basis that the municipal liability limit on damages under WIS. STAT. § 893.80(3), which limits damages at $50,000 for acts done in official capacity, applied to claims against Bauman. Tri-Corp argued that whether Bauman's acts were within the scope of his employment were a question for the jury. The court determined there was a question of fact and denied Bauman's motion in May 2018.

Appeals (BOZA).[3]  We recite the substance of the remaining three claims of Bauman's speech allegedly defaming Tri-Corp through false and malicious speech.

¶7     Tri-Corp's first remaining claim is that in March 2007, Bauman emailed the City of Milwaukee Department of Neighborhood Services (DNS) asking it to take immediate action to revoke West Samaria's special use permit for being inconsistent with the plan of operation, after Droese's death earlier that year. DNS determined that West Samaria was operating in a manner inconsistent with its approved plan of operation, and its special use permit was revoked.  Also in March 2007, after the special use permit was revoked, Bauman emailed his aldermanic constituents stating: "[DNS] has determined that the recent events at West Samaria violate its plan of operation.  DNS is going to issue an order revoking the Special Use Permit and order the property vacated."  When Tri-Corp appealed the revocation to BOZA later that month, DNS admitted at a hearing that it had failed to conduct an investigation, and the order revoking Tri-Corp's permit was stayed.

¶8     Tri-Corp's second claim is that in a March 23, 2007 news release from the City of Milwaukee about BOZA's stay of the revocation order, Bauman was quoted stating:  "The problem with BOZA's action is that West Samaria has

---

[3] The claims dismissed were:  Bauman's testimony at the May 18, 2006 BOZA meeting concerning the death of West Samaria resident David Rutledge in July 2004.  Bauman was quoted about the same hearing in the Milwaukee Journal Sentinel that West Samaria was "unfit for human habitation."  Additionally, Bauman circulated a letter in April 2007 which presented to BOZA two additional complaints alleging assault and mistreatment of West Samaria residents. This court noted in our previous decision that a subsequent police investigation found no factual support for the allegations in Bauman's letter.  *WHEDA v. Tri-Corp Hous., Inc.*, No. 2010AP1443, unpublished slip op., ¶10 (WI App May 10, 2011).

repeatedly demonstrated that they are unwilling or unable to provide quality care to the mentally disabled residents who live there."

¶9      The final defamation claim is that in October 2007, Bauman spoke at a meeting convened by WHEDA to discuss West Samaria and the referral of residents by Milwaukee County. Bauman was quoted as stating that West Samaria had "bad design, bad location, and a bad operator."

¶10      The circuit court conducted a jury trial in February 2022 on the tortious interference with contract claim and the remaining defamation claims. Testimony was presented from Michael Brever, the executive director of Tri-Corp during the relevant time, Bauman, as well as staff members from WHEDA, Milwaukee County, and the City of Milwaukee. Tri-Corp and Bauman presented expert accounting witnesses who analyzed the fiscal impact on Tri-Corp of the controversy with Bauman.

¶11      At the close of evidence, Bauman moved for a directed verdict, pursuant to WIS. STAT. § 805.14(4) (2021-22).[4] Bauman argued that Tri-Corp had submitted no evidence to establish that Bauman acted out of a personal motivation to harm Tri-Corp or deviated from his official role. Bauman contended that the circuit court must dismiss the tortious interference with contract claim because Bauman's "alleged interference involved matters of public concern, his actions are privileged as a matter of law and cannot be the basis of any liability" under the law. Additionally, Bauman argued that the tortious interference claim failed on the facts.

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶12    The circuit court found that Bauman's comments at issue in the tortious interference with contract claim were a matter of public concern, noting that a pretrial question was whether there was evidence that Bauman's efforts opposing West Samaria occurred before or outside the time he was alderman. After concluding that no evidence was adduced at trial that Bauman's speech or conduct concerning Tri-Corp being was made outside of his aldermanic role, the court granted a directed verdict on the tortious interference with contract claim.

¶13    The circuit court denied a directed verdict on the defamation claims and sent questions about three statements to the jury: (1) "Did Robert Bauman say to [DNS] that the fact that Joseph Droese died and was not discovered for four days [suggests] that West Samaria was not operating in compliance with the Plan of Operation or operating in a manner consistent with the health, safety and welfare of the public?" (2) "Did Robert Bauman say that 'West Samaria has repeatedly demonstrated that they are unwilling or unable to provide quality care to the mentally disabled residents who live there?'" and (3) "Did Robert Bauman say that West Samaria had a bad design, bad location and bad operator?"

¶14    The circuit court answered "yes" to the threshold question that the statements were made, but then the jury was asked whether each statement was true. If the statement was not true, the jury was then asked if the statement was made "with reckless disregard of its truth or falsity." If that was answered affirmatively, the jury was asked whether "[i]n making or publishing the statement, did Robert Bauman abuse his First Amendment privilege?" Finally, if that was answered affirmatively, the jury was asked whether Bauman's statements were made while "acting within the scope of his employment."

¶15    While the jury found that all three statements were not true, it did not find that Bauman made the first statement "with reckless disregard of its truth or falsity." The jury found that Bauman's second and third statements were made with reckless disregard of truth, made in abuse of his First Amendment privileges, and were not made within the scope of his employment. Finally, the jury answered that $1.4 million would be the sum that would reasonably compensate Tri-Corp for Bauman's defamatory statements.

¶16    Bauman filed after-verdict motions. First, he moved for judgment notwithstanding the verdict (JNOV) on the basis that the First Amendment protected public officials engaged in matters of public concern and he was engaged in advocacy when the statements were made. He asserted that Tri-Corp had failed to show actual malice at trial, pointing out that the circuit court concluded that punitive damages were not appropriate. Second, Bauman moved for the court to change the jury special verdict questions related to actual malice and the First Amendment.

¶17    The circuit court granted Bauman's after-verdict motion, concluding it must change the jury's answers to the questions asking whether the second and third statements were made "with reckless disregard of its truth or falsity" from "yes" to "no" and render moot the subsequent questions about abusing First Amendment privilege and acting within the scope of employment. The court concluded that "all of the statements at issue are substantially true, and Bauman's statement regarding West Samaria's 'bad design, bad location, and a bad operator' is pure opinion." The court determined that Tri-Corp was "a limited purpose public figure" and that there was no evidence in the record to demonstrate that Bauman acted with actual malice. The court dismissed Tri-Corp's claims. Tri-Corp now appeals.

**DISCUSSION**

¶18     Tri-Corp argues that the circuit court erred when it changed the verdict answers. Tri-Corp asserts that the circuit erred when it found that Tri-Corp was a public figure, thus triggering the requirement of actual malice to prevail on its claims. Further, Tri-Corp argues that there was credible evidence to the support the jury's finding that Bauman acted with actual malice. Finally, Tri-Corp contends that if a new trial were granted, the tortious interference with contract claim should be reinstated because the circuit court erred when it granted the motion for directed verdict.

¶19     Any party may move the court after the verdict to "change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer." WIS. STAT. § 805.14(5)(c). When the circuit court considers a motion to change a jury's answer, it "must view the evidence in the light most favorable to the verdict and affirm the verdict if it is supported by any credible evidence." *Richards v. Mendivil*, 200 Wis. 2d 665, 671, 548 N.W.2d 85 (Ct. App. 1996).

¶20     "An appellate court should not overturn a circuit court's decision to dismiss for insufficient evidence unless the record reveals that the circuit court was 'clearly wrong.'" *Legue v. City of Racine*, 2014 WI 92, ¶138, 357 Wis. 2d 250, 849 N.W.2d 837 (citation omitted). A circuit court is "clearly wrong" when it "dismisses a claim that is supported by any credible evidence[.]" *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶36, 312 Wis. 2d 251, 752 N.W.2d 800. "Because a circuit court is better positioned to decide the weight and relevancy of the testimony, an appellate court 'must also give substantial deference to the [circuit] court's better ability to assess the evidence.'" *Weiss v. United Fire &*

*Cas. Co.*, 197 Wis. 2d 365, 388-89, 541 N.W.2d 753 (1995) (quoting *James v. Heintz*, 165 Wis. 2d 572, 577, 478 N.W.2d 31 (Ct. App.1991)).

¶21    We therefore must assess whether there is any credible evidence to support the jury's findings of reckless disregard for the truth in the second and third defamation claims.    A common law action for defamation has three elements:

> (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her.

*Ladd v. Uecker*, 2010 WI App 28, ¶8, 323 Wis. 2d 798, 780 N.W.2d 216.   "The United States Supreme Court has determined that the First and Fourteenth Amendments to the federal constitution require that defamation plaintiffs who are public figures must also prove by clear and convincing evidence another element, actual malice." *Storms v. Action Wis. Inc.*, 2008 WI 56, ¶38, 309 Wis. 2d 704, 750 N.W.2d 739.

¶22    "Generally, 'public figures' are defined as 'those persons who, although not government officials, are nonetheless 'intimately involved in the resolution of important public questions.'" *Bay View Packing Co. v. Taff*, 198 Wis. 2d 653, 675, 543 N.W.2d 522 (Ct. App. 1995) (citation omitted).   "One may become a public figure … for all purposes due to general fame or notoriety." *Wiegel v. Capital Times Co.*, 145 Wis. 2d 71, 82, 426 N.W.2d 43 (Ct. App. 1988) (citation omitted).   Alternatively, one can become a limited purpose public figure through "involvement in a particular public issue or controversy[.]" *Id.*

10

¶23    "Actual malice is a term of art; it is not used in its ordinary meaning of evil intent." *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 536, 563 N.W.2d 472 (1997).  To prove actual malice, the plaintiff must show "that the defamatory falsehood was published with knowledge of its falsity or with reckless disregard for its truth." *Id.*

¶24    Tri-Corp argues that it is not a "public figure," therefore it would not need to show "actual malice" in Bauman's statements to prevail.  The question of whether an entity is a "'limited purpose public figure' is an issue left solely to the court to decide as a matter of law, not an issue of fact to be decided by the jury." *Bay View Packing Co.*, 198 Wis. 2d at 676-77.  Therefore, we independently review the circuit court's determination that Tri-Corp was a limited purpose public figure.

¶25    We begin with the two-prong inquiry to determine whether a plaintiff is a "limited purpose public figure" for a defamation action:  "(1) there must be a public controversy; and (2) the court must look at the nature of the plaintiff's involvement in the public controversy to see whether the plaintiff has injected himself or herself into the controversy so as to influence the resolution of the issues involved." *Id.*, at 677-78 (citing *Denny v. Mertz*, 106 Wis. 2d 636, 649-50, 318 N.W.2d 141 (1982)).  The record reflects that there was a public controversy over the continued operation of West Samaria.

¶26    The second prong is subject to three inquiries to determine whether the plaintiff's involvement in the controversy, framed either as a "voluntary injection" or if the public figure was drawn into a particular public controversy. *Sidoff v. Merry*, 2023 WI App 49, ¶18, 409 Wis. 2d 186, 996 N.W.2d 88 (citation omitted).  The three inquiries require us to (1) isolate the controversy; (2) examine

the plaintiff's role in the controversy to determine if it was "more than trivial or tangential"; and (3) determine "if the alleged defamation was germane to the plaintiff's participation in the controversy." *Van Straten v. Milwaukee Journal Newspaper-Publisher*, 151 Wis. 2d 905, 913-14, 447 N.W.2d 105 (Ct. App. 1989).

¶27    Tri-Corp argues that merely being newsworthy does not mean that it involved itself in a public controversy. However, as the circuit court noted in its analysis, Tri-Corp undertook certain actions relevant to the "involvement" analysis. For example, Tri-Corp, through its executive director, Brever, made statements throughout the public controversy that attempted to mitigate West Samaria's responsibility, particularly with regard to the supervision and monitoring of Droese. The record reflects that when DNS issued the order to vacate West Samaria because inspectors determined that Tri-Corp violated conditions of its special permit by not properly monitoring residents, Brever again pointed the blame to a case worker from Milwaukee County for failing to monitor Droese.

¶28    Our examination of the record supports that the second prong—the three part inquiry into Tri-Corp's involvement in the public controversy—is satisfied. The controversy can be isolated to the continuing operations for West Samaria after the death of two residents. As the operator in question, we consider Tri-Corp's role to not be tangential or trivial. Finally, Bauman's statements were germane to Tri-Corp's role in the controversy. "[T]he focus of the inquiry should be on the plaintiff's role in the public controversy rather than on any desire for publicity or other voluntary act on his or her part." *Wiegel*, 145 Wis. 2d at 85. Here, Tri-Corp was intrinsic to the discussion and we agree with the circuit court's

conclusion that it was a "limited purpose public figure" for this issue. As a public figure, Tri-Corp was therefore required to show actual malice to prove defamation.

¶29 We now consider whether there was any credible evidence of actual malice on Bauman's part in making statements that West Samaria repeatedly demonstrated that they are unwilling or unable to provide quality care to the mentally disabled residents who live there and that West Samaria had a bad design, bad location, and bad operator.

¶30 Tri-Corp appears to ask us to conclude that the circuit court erred because that the jury could have found credible evidence that Tri-Corp did not mismanage West Samaria. However, that is not our inquiry. Our inquiry focuses on Bauman's perspective at the time of the statements. Credible evidence of actual malice does not look for evil intent, but whether Bauman made false statements "with the high degree of awareness of ... probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964), or that Bauman "entertained serious doubts as to the truth" of his statements, *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

¶31 The record reflects that at the time of Bauman's statements, two West Samaria residents had died, Bauman had received complaints about Tri-Corp and its management of West Samaria, he had heard criticism of Tri-Corp at multiple BOZA hearings, and he had received an audit by the City of Milwaukee Comptroller that found non-compliance with grant regulations and potential fraud in subcontractor billing related to Tri-Corp. At the same time, there was repeated and in-depth news coverage of the housing, care, and treatment of individuals with mental disabilities and illnesses in Milwaukee by the local newspaper, with over a dozen articles admitted into evidence including multiple references to Tri-Corp and West Samaria.

¶32    Although Tri-Corp argues that Bauman did not investigate the truth of the operation of West Samaria, the "mere proof of failure to investigate the accuracy of a statement, without more, cannot establish reckless disregard for the truth." *Van Straten*, 151 Wis. 2d at 918.  We cannot consider Bauman to be speaking with actual malice because he did not investigate Tri-Corp's operations more fully.  Bauman believed that Tri-Corp was failing to provide appropriate care for the residents of West Samaria.  We agree with the circuit court's conclusion that there was no credible evidence of actual malice adduced at trial; therefore, the motion to change the jury's answers on the verdict was appropriate.

¶33    Further, Bauman was an alderman representing his constituents in the City of Milwaukee.  His speech occurred within his political advocacy over a matter of public concern.  The law has recognized a defense of privilege in defamation actions for government officials to allow them to "be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties" because such suits would distract from government service and "the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." *Barr v. Matteo*, 360 U.S. 564, 571 (1959).  The record reflects that this case went to trial to determine if Bauman's speech was part of his advocacy as an alderman and not with a "personal motive not connected with the public good." *Id.* (citation omitted).  Although Tri-Corp suggested that Bauman acted out of a desire to keep individuals with mental disabilities out of his own neighborhood, there was no evidence of this produced at trial.

¶34    The record also reflects that West Samaria was a matter of public concern.  "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the

community[.]'" ***Snyder v. Phelps***, 562 U.S. 443, 453 (2011). Bauman's statements were made as part of the controversy over West Samaria and housing its residents. The First Amendment protects speech over matters of public concern even when the speech is "upsetting or arouses contempt." ***Id.*** at 458. The jury's verdict shows it may not have approved of Bauman's statements; nevertheless, "public debate" must be tolerated under the First Amendment. ***Id.***

¶35    We conclude that the circuit court did not err when it concluded Tri-Corp was a limited purpose public figure, that there was no credible evidence of actual malice, and that the jury's answers to the reckless disregard questions should be changed. Therefore, we affirm the circuit court's judgment and do not order a new trial.

¶36    Tri-Corp argues that if a new trial were ordered, the tortious interference with contract claim should be tried because the directed verdict was decided in error. Because we conclude that a new trial is not required, we decline to address this argument. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

## CONCLUSION

¶37    For the reasons stated above, we conclude that the circuit court did not err when it dismissed Tri-Corp's claims. We affirm the judgment and order of the circuit court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.